

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-22-2006

# Obale v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 05-1109

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Obale v. Atty Gen USA" (2006). *2006 Decisions.* Paper 787.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/787

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-1109

———

AYUK AKO OBALE,
                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES*


*(Caption amended pursuant to Rule 43(c), Fed. R. App. Pro.)


———


Petition for Review of the Order
of the Board of Immigration Appeals
(A95-462-645)
Immigration Judge: Honorable Miriam K. Mills

———


Argued December 13, 2005

Before: SLOVITER, SMITH, and STAPLETON,
Circuit Judges.

(Filed: June 22, 2006 )


———

John L. Sesini    (Argued)
Milwaukee, WI 53233

        Attorney for Petitioner

Linda S. Wernery
John M. McAdams, Jr.    (Argued)
United States Department of Justice

Office of Immigration Litigation
Washington, DC 20044

Attorneys for Respondent

OPINION OF THE COURT
———

SLOVITER, Circuit Judge.

In this petition for review from a final order of removal entered by the Board of Immigration Appeals ("BIA") the petitioner, Ayuk Ako Obale ("Obale"), argues that the decision of the BIA was not supported by substantial evidence. She also moves for a stay of the voluntary departure period. Before we consider the merits of the stay request, we must decide the threshold issue of whether we have jurisdiction to issue the stay.

I.

Obale is a twenty-eight-year-old native and citizen of Cameroon who was admitted to the United States on or about November 29, 1997 on a non-immigrant, F-1 visa. She overstayed her visa, which expired on June 1, 1999. On July 3, 2002, the Government issued a Notice to Appear charging Obale with removability from the United States under section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"). Obale admitted that she was removable as charged and sought relief in the forms of asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). An Immigration Judge ("IJ") denied Obale's applications for relief but granted her a sixty-day period to voluntarily depart before an order for removal to Cameroon would take effect.

The BIA affirmed the IJ's decision without opinion, and granted Obale a thirty- day voluntary departure period from the date of its order. Two days before expiration of the period in which Obale could voluntarily depart, she sought review in this court of the BIA decision as well as a stay of removal and of the

2

thirty-day period for voluntary departure pending appellate review. This court granted Obale's motion for a stay of removal, but referred the motion for stay of voluntary departure to a merits panel to resolve the question of our jurisdiction to grant such a stay.

## II.

The question of our jurisdiction to stay the remaining two days of the thirty-day period in which Obale must voluntarily depart is one of first impression for this court.[1] As we noted in Reynoso-Lopez v. Ashcroft, 369 F.3d 275 (3d Cir. 2005), the Attorney General will grant an alien voluntary departure as an

---

[1] Several other courts of appeals have addressed this question. The majority of them hold that courts of appeals have jurisdiction to stay the voluntary departure period, either because courts of appeals have equitable power to issue a stay or because 28 U.S.C § 2349 contains a statutory grant of jurisdiction. See, e.g., Bocova v. Gonzales, 412 F.3d 257, 267 (1st Cir. 2005) ("We regard [28 U.S.C § 2349] as authorizing courts of appeals, in immigration cases, to suspend (that is, to stay) the running of unexpired voluntary departure periods."); Lopez-Chavez v. Ashcroft, 383 F.3d 650, 653 (7th Cir. 2004) (citing approvingly those courts holding "that courts retain the equitable power to stay voluntary departure orders"); Rife v. Ashcroft, 374 F.3d 606, 615 (8th Cir. 2004) ("The grant or denial of a stay pending appeal is a customary part of the judicial function.") (citing Fed. R. App. P. 8); El Himri v. Ashcroft, 344 F.3d 1261, 1262 (9th Cir. 2003) (adopting Zazueta-Carrillo v. Ashcroft, 322 F.3d 1166, 1175-78 (9th Cir. 2003) (Berzon, J., concurring) (holding that courts of appeals have both equitable jurisdiction and a statutory grant of jurisdiction over motions to stay the voluntary departure period)); Nwakanma v. Ashcroft, 352 F.3d 325, 327 (6th Cir. 2003) (holding that "equitable power of the courts of appeals extends to stays of voluntary departure"); but see Ngarurih v. Ashcroft, 371 F.3d 182, 193 (4th Cir. 2004) (holding that Section 1229c specifically precludes review of a denial of a request for voluntary departure).

alternative to removal under certain circumstances.[2]  Permission for voluntary departure is significant because it allows the alien to depart the United States at his or her own expense without being subject to the penalties and restrictions that removal imposes.  An alien who is removed may not reenter the United States without the Attorney General's permission for ten years. Id. at 279.  In contrast, an alien who is granted voluntary departure may reenter the United States once he or she has obtained proper documentation.  Id.   The Government contends that we do not have jurisdiction over Obale's motion to stay the period of voluntary departure because "the authority to reinstate or extend the privilege of voluntary departure is solely within the discretion of the Attorney General."  Resp't Letter Mem. dated Jan. 11, 2006, at 4.

No extensive citation is needed for the principle that "[t]he jurisdiction of the Courts of Appeal is limited to that conferred by statute." Vineland Chem. Co. v. United States, EPA, 810 F.2d 402, 405 (3d Cir. 1987).  Thus, our jurisdiction over Obale's motion, if we have it, must be conferred by the INA or other relevant statute.  See Union Switch & Signal Div. Am. Standard Inc. v. United Elec., Radio and Mach. Workers Local 610, 900 F.2d 608, 612 (3d Cir. 1990).  Although a statutory basis for jurisdiction is required, we have stated that "case law caution[s] this court not to construe appellate review provisions too narrowly." Williams v. Metzler, 132 F.3d 937, 943 (3d Cir. 1997) (alteration in original) (citation and internal quotation marks omitted). Moreover, "[t]he presumption of judicial  review in the face of statutory silence has become a part of the fabric of the Administrative Procedure Act." United

---

[2]An alien is eligible for voluntary departure when the alien has been physically present in the United States for a period of at least one year immediately preceding the date the notice to appear was served; the alien is and has been a person of good moral character for at least five years immediately preceding the alien's application for voluntary departure; the alien is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4); and the alien has established by clear and convincing evidence that s/he has the means to depart the United States and intends to do so. 8 U.S.C. 1229c(b)(1)(A)-(D).

4

States v. Herman, 589 F.2d 1191, 1210 (3d Cir. 1978) (Garth, J., concurring in part and dissenting in part).  To support a finding that Congress intended to preclude judicial review of an administrative action, there must be "clear and convincing evidence," such as that "provided by the language of the statute." Southern Ry. Co. v. Seaboard Allied Milling Corp., 442 U.S. 444, 462 (1979) (citation and internal quotation marks omitted).

When reviewing agency decisions, courts of appeals have jurisdiction "of the proceeding." 28 U.S.C. § 2349(a).[3]  In the immigration context, there are numerous exceptions to this general grant of jurisdiction.  The INA expressly precludes our jurisdiction to review either a denial or a grant of a request for voluntary departure.  See 8 U.S.C. § 1229c(f) ("No court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure . . . , nor shall any court order a stay of an alien's removal pending consideration of any claim with respect to voluntary departure."); see also 8 U.S.C. § 1252(a)(2)(B)(I) ("[N]o court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1229c[.]")   In addition, this court has held that it does not have jurisdiction to reinstate the period of voluntary departure after it has expired.  Reynoso-Lopez, 369 F.3d at 280.

These statutory provisions may suggest that we have no jurisdiction to review a motion for a stay of voluntary departure, but they do not so provide explicitly.  "[W]henever Congress wanted to oust the jurisdiction of the courts, it not only knew how to do it but did so in no uncertain terms."  Arrow Trans. Co. v. Southern Ry. Co., 372 U.S. 658, 679 (1963) (Clark, J., dissenting); see also Chamakov v. Blackman, 266 F.3d 210, 214 (3d Cir. 2001).  It follows that we have jurisdiction over all

_____

[3] We note that the word "proceeding" is not defined in the statute. Thus, we must interpret the term according to its "ordinary meaning."  See Heil-Coil Corp. v. Webster, 352 F.2d 156, 167 (3d Cir. 1965) (en banc).   Black's Law Dictionary defines "proceeding" as  "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment."  Black's Law Dictionary 1241 (8th ed. 2004).

matters related to a particular proceeding except where Congress has explicitly stated otherwise. Given that Congress has explicitly stated the courts of appeals may not hear appeals from grants or denials of voluntary departure, it is reasonable to conclude that if Congress wished to strip this court of jurisdiction to grant stays of voluntary departure, it would have done so. Inasmuch as Obale's petition for a stay of the period of voluntary departure is a part of the proceedings below and Congress has not explicitly denied this court jurisdiction over such a motion, we conclude, in accordance with the majority of the courts of appeals that have considered the issue, see note 1 supra, that we have jurisdiction over Obale's motion.

The Government argues that we answered the question of our jurisdiction in Reynoso-Lopez, where we held that we do not have jurisdiction to reinstate the period of voluntary departure after it expires. According to the Government, the fact that Obale characterizes her request as a "stay" of the voluntary departure period, rather than a reinstatement or extension, is irrelevant.[4]

We reject the Government's contention that our holding in Reynoso-Lopez governs this case. In Reynoso-Lopez, we addressed the narrow issue of whether a court may extend the period of voluntary departure after it had terminated. We noted that regulations promulgated pursuant to IIRIRA clearly state that "'[a]uthority to extend the time within which to depart voluntarily specified initially by an immigration judge or the Board is only within the jurisdiction of the district director, the Deputy Executive Associate Commissioner for Detention and Removal, or the Director of the Office of Juvenile Affairs.'" 369

---

[4] To support this contention, the Government cites our non-precedential opinion in Hadi v. Att'y Gen., No. 04-3343, 2005 WL 2811787 (3d Cir. Oct. 27, 2005), in which we stated that "[w]e find this difference legally insignificant." Id. at *5. We note that because our opinion in Hadi is non-precedential, we are not bound by it. See Fallon Elec. Co. v. Cincinnati Insur. Co., 121 F.3d 125, 128 n.1 (3d Cir. 1997) ("[T]he Court does not regard such opinions as binding precedent."). Thus, it has no bearing on whether we have jurisdiction over Obale's stay request.

6

F.3d at 280 (alteration in original) (quoting 8 C.F.R. 1240.26(f)). We concluded that under IIRIRA, the executive branch is given the sole authority to reinstate a voluntary departure period after it has expired.

We considered the effect of Reynoso-Lopez in Kanivets v. Gonzales, 424 F.3d 330 (3d Cir. 2005), where we noted its limited holding. In Kanivets, we held that the alien's timely motion to reopen tolled the voluntary departure period until the BIA decided the merits of the case. We stated, "Reynoso-Lopez . . . is . . . distinguishable. . . . That is a different situation from that presented here where we hold that tolling applies during the period of time that the BIA deliberates on a timely motion to reopen." Id. at 335. To the extent that Reynoso-Lopez contains language that suggests that its analysis extends to motions for stays of voluntary departure, 369 F.3d at 283, such language is dicta.[5] The language in Reynoso-Lopez that discusses the similarities between tolling and reinstatement is not necessary to the holding in that case.

Unlike the power to extend or reinstate the voluntary departure period, the power to stay it is part of the federal courts' traditional equitable powers. "The power to stay is incidental to the power inherent in every court to dispose of cases so as to promote their fair and efficient adjudication." United States v. Breyer, 41 F.3d 884, 893 (3d Cir. 1994). "Unless otherwise provided by statute, all the inherent equitable powers of the [federal courts] are available for the proper and complete exercise of [the courts'] jurisdiction." Porter v. Warner Holding Co., 328 U.S. 395, 398 (1946); see also Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc., 222 F.3d 132, 137 (3d Cir. 2000) (citation and quotation marks omitted) (stating that "absent a clear congressional command to the contrary, federal courts retain their authority to issue injunctive relief in actions over which they have jurisdiction"). We find no indication that

---

[5] Dictum is "'a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding[.]'" In re McDonald, 205 F.3d 606, 612 (3rd Cir. 2000) (quoting Sarnoff v. Am. Home Prod. Corp., 798 F.2d 1075, 1084 (7th Cir. 1986)).

7

Congress intended to eliminate this court's equitable jurisdiction to grant a stay of the voluntary departure period. Thus, if the BIA's grant of voluntary departure is set forth as part of a "final order" within the meaning of 28 U.S.C. § 1252, this court has jurisdiction to grant a stay of that period.

## III.

"It is hornbook law that an administrative order to be subject to judicial review must be 'final'." Lam Man Chi v. Bouchard, 314 F.2d 664, 670 (3d Cir. 1963). "[A] final order need not necessarily be the very last order in an agency proceeding, but rather, is final for purposes of judicial review when it impose[s] an obligation, den[ies] a right, or fix[es] some legal relationship as a consummation of the administrative process." Shea v. Office of Thrift Supervision, 934 F.2d 41, 44 (3d Cir. 1991) (alteration in original) (citation, internal quotation marks, and emphasis omitted).

The generally applicable requirement of finality is expressly incorporated in the INA, which provides that when reviewing immigration proceedings, courts of appeals have jurisdiction to review only "final orders of removal." Section 1252(b)(9) specifically provides: "Judicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available *only in judicial review of a final order under this section*." 8 U.S.C. § 1252(b)(9) (emphasis added).[6]

---

[6] In addition, section 1252(a)(1) provides that "Judicial review of a final order of removal . . . is governed only by [28 U.S.C. §§ 2341-2351], except as provided in [§ 1252(b)]." Section 1252(a)(5) provides that

> a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter . . . .

8

The term "order of deportation," and the point at which such an order becomes "final," are defined at 8 U.S.C. § 1101(a)(47).[7] That section provides:

> (A) The term "order of deportation" means the order of the special inquiry officer, or other such administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is deportable, *concluding that the alien is deportable or ordering deportation*.
> (B) The order described under subparagraph (A) shall become final upon the earlier of–
> > (i) a determination by the Board of Immigration Appeals affirming such order; or
> > (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals.

8 U.S.C. § 1101(a)(47)(A)-(B) (emphasis added).

Over thirty years ago, the Supreme Court held that a simultaneous grant of voluntary departure did not affect the finality of an order of removal. In Foti v. INS, 375 U.S. 217 (1963), the Supreme Court noted that "[t]he granting of voluntary departure relief does not result in the alien's not being subject to an outstanding final order of deportation." Id. at 220 n. 1. Although the Court did not provide citation or explanation for this assertion, its view was consistent with then-current administrative regulations. Section 243.1 of volume 8 of the Code of Federal Regulations, which was originally issued in 1961 and remained in force until 1997, provided that "an order

_____

[7] Section 309(d)(2) of IIRIRA provides that "[f]or purposes of carrying out the Immigration and Nationality Act, as amended by this subtitle- . . . (2) any reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation." 110 Stat. 3009 (1996).

of deportation, including an alternate order of deportation coupled with an order of voluntary departure, . . . shall become final upon dismissal of an appeal by the Board of Immigration Appeals . . .; or, . . . it shall be final as of the date of the Board's decision." 8 C.F.R. § 243.1 (1997). Courts relied on Foti and § 243.1 for the proposition that voluntary departure did not affect the finality of a removal order. See, e.g., Karimian-Kaklaki v. INS, 997 F.2d 108, 112 (5th Cir. 1993) ("The privilege of voluntary departure granted to petitioners is irrelevant to the finality (and thus appealability) of the BIA order.") (citing Foti, 375 U.S. at 219 n.1, and 8 C.F.R. § 243.1 (1993)); Hadera v. INS, 136 F.3d 1338, 1340-41 (D.C. Cir. 1998) (citing Foti, 375 U.S. at 219 n.1, Karimian-Kaklaki, 997 F.2d at 112, and 8 C.F.R. § 243.1 (1997)).

In 2005, however, the Department of Homeland Security ("DHS") issued administrative regulations which state that an order is not final until the period of voluntary departure has expired.[8] The current regulation governing the finality of

---

[8] When the former-INS issued the interim rules in 1997, following a notice of proposed rulemaking and an abbreviated comment period, it issued the following explanation regarding the regulations' general treatment of voluntary departure periods:

> [S]everal commenters requested clarification regarding the effect of a motion or appeal to the Immigration Court, BIA, or a federal court on any period of voluntary departure already granted. . . . Regarding post-hearing voluntary departure, the Department considered several options, but has not adopted any position or modified the interim rule. The Department has identified three possible options: no tolling of any period of voluntary departure; tolling the voluntary departure period for any period that an appeal or motion is pending; or setting a brief, fixed period of voluntary departure (for example, 10 days) after any appeal or motion is resolved. The Department wishes to solicit additional public comments on these or other possible approaches to this issue so that it can be

removal orders, the voluntary departure provision of which appears to have gone wholly unaddressed by the courts since its issuance in 1997, now reads:

> An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final:
>
> (a) Upon dismissal of an appeal by the Board of Immigration Appeals;
>
> (b) Upon waiver of appeal by the respondent;
>
> (c) Upon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time;
>
> (d) If certified to the Board or Attorney General, upon the date of the subsequent decision ordering removal;
>
> (e) If an immigration judge orders an alien removed in the alien's absence, immediately upon entry of such order; or
>
> (f) If an immigration judge issues an alternate order of removal in connection with a grant of voluntary departure, upon overstay of the voluntary departure period except where the respondent has filed a timely appeal with the Board. In such a case, the order shall

---

resolved when a final rule is promulgated.

Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10,312, 10,325-26 (Mar. 6, 1997) (interim rule). Curiously, the DHS does not appear to have ever issued a follow-up statement explaining its final position with regard to the tolling of voluntary departure on appellate review. The regulation remained unaddressed as an interim rule until finalized, without pertinent comment, in 2005. Execution of Removal Orders, 70 Fed. Reg. 661, 673 (Jan. 5, 2005). By then, the regulation had become a final rule, but the DHS does not appear to have ever substantively addressed the question it left open in its commentary to the interim rules.

become final upon an order of removal by the Board or the Attorney General, or upon overstay of any voluntary departure period granted or reinstated by the Board or the Attorney General.

8 C.F.R. § 1241.1 (2005).

Section 1241.1(f) provides that when an IJ has issued an alternate order of removal in connection with a grant of voluntary departure, the order does not become "final" until the alien overstays the period for voluntary departure. But, if the alien files a timely appeal with the BIA, then the order becomes final either when the BIA issues an order of removal (implicitly unaccompanied by a grant of voluntary departure) or, if the BIA reinstates or grants a period of voluntary departure, upon overstay of the BIA's new voluntary departure period.

Because § 1241.1(f) of the regulations would be inconsistent with the statutory definition of a final order of removal if applied to determine finality for purposes of judicial review, we decline to enforce it here. As noted supra, the relevant statute, 8 U.S.C. § 1101(a)(47)(A), provides that an "order of [removal]" means the order "concluding that the alien is [removable] or ordering [removal]." Such orders become final upon "a determination by the Board of Immigration Appeals affirming such order." 8 U.S.C. § 1101(a)(47)(B). Thus, the statutory definition of an order of removal encompasses not only orders actually ordering removal, but also orders in which an IJ merely determines that an alien *is* removable and issues a contingent order of removal. Accordingly, we conclude that the IJ determined that Obale was removable on the date she issued her alternate order of removal and that the BIA's affirmance of that determination effected a "final" order on the date of the BIA's decision.[9]

_____

[9] Enforcement of 8 C.F.R. § 1241.1 in cases where an alien voluntarily departs would deprive the alien of the opportunity to seek judicial review. That is – if there is no final order of removal until "overstay of any voluntary departure period," then there is never a final order when the respondent voluntarily departs in a timely fashion. Such an outcome would be inconsistent with

12

IV.

We turn now to the substantive standards for evaluating a motion to stay the running of a previously granted voluntary departure period. We concur with the courts of appeals that have held the standard for obtaining a stay of removal also applies to stays of voluntary departure.[10] See, e.g., Bocova, 412 F.3d at 269-70; Rife, 374 F.3d at 616; El Himri v. Ashcroft, 344 F.3d 1261, 1262 (9th Cir. 2003); Nwakanma v. Ashcroft, 352 F.3d 325, 327 (6th Cir. 2003).

---

Congressional intent. Congress enacted 8 U.S.C. § 1252(b)(3)(B) in order to permit judicial review of a removal order even if the alien has departed the United States. See Reynoso-Lopez, 369 F.3d at 281 (citing 8 U.S.C. § 1252(b)(3)(B)); cf. 8 U.S.C. § 1105a(c) (1994) (repealed). Moreover, § 1241.1(f)'s suggestion that the time period for filing a timely petition for review in a situation like this begins to run on the date the petitioner overstays his voluntary departure is inconsistent with the common practice of the BIA and of courts of appeals. See, e.g., In re Goolcharan, 23 I. & N. Dec. 5 (BIA 2001); Harchenko v. INS, 379 F.3d 405, 409 (6th Cir. 2004).

We note, however, that § 1241.1 may have been intended solely to specify when an order of removal may be executed, as opposed to when an order of removal is final for purposes of review. Indeed, this may explain the Government's failure to mention the regulation in its briefing.

[10] Courts are divided on the issue of whether courts should read a petition for a stay of removal as implicitly including a petition for stay of voluntary departure. The Sixth, Eighth, and Ninth Circuits incorporate a request for a stay of departure into requests for stay of removal. See Macotaj v. Gonzales, 424 F.3d 464, 467 (6th Cir. 2005); Rife, 374 F.3d at 616; Desta, 365 F.3d at 745-46. The First and Seventh Circuits have rejected that view and require a particularized request for a stay of voluntary departure. See Bocova, 412 F.3d at 268; Alimi v. Ashcroft, 391 F.3d 888, 892-93 (7th Cir. 2004). We express no view on the question.

13

We apply the standard for granting a preliminary injunction when examining a petition for a stay of removal, Douglas v. Ashcroft, 374 F.3d 230, 234 (3d Cir. 2004), and therefore also when considering a petition for a stay of voluntary departure. Under the preliminary injunction standard, a petitioner requesting a stay of removal must demonstrate: (1) a likelihood of success on the merits of the underlying petition; (2) that irreparable harm would occur if a stay is not granted; (3) that the potential harm to the moving party outweighs the harm to the opposing party if a stay is not granted; and (4) that the granting of the stay would serve the public interest. Id. at 233.

Because this court, applying this test, previously granted Obale's petition for a stay of removal, we will also grant the petition for a stay of voluntary departure pending our final decision on the merits of this case. See Desta, 365 F.3d at 748 ("If an alien is eligible for a stay of removal, he is necessarily eligible for a stay of voluntary departure."); but see Bocova, 412 F.3d at 270 (concluding that "there may be cases in which an alien is entitled to a stay of removal but not a stay of voluntary departure"); Alimi, 391 F.3d at 892-93 (same).

V.

To qualify for asylum, Obale must demonstrate that she meets the statutory definition of "refugee" under the INA. A refugee is "[a]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C. § 1101(a)(42).

The threshold for establishing eligibility for withholding of removal is higher than that for establishing entitlement to asylum and requires the alien to demonstrate a "clear probability" that, upon removal to the country of origin, his or her "life or freedom would be threatened on account of one of the statutorily enumerated factors." Senathirajah v. INS, 157 F.3d 210, 215 (3d Cir. 1998). An applicant who does not qualify for asylum necessarily does not qualify for withholding of

14

removal. <u>Guo v. Ashcroft</u>, 386 F.3d 556, 561 n.4 (3d Cir. 2004). To qualify for relief under the CAT, an applicant for relief bears the burden of proving through objective evidence that "it is more likely than not" that s/he would be "tortured" in the country to which the applicant would be removed. <u>Wang v. Ashcroft</u>, 368 F.3d 347, 349 (3d Cir. 2004); 8 C.F.R. § 1208.16(c)(2).

Where, as here, the BIA affirms the IJ's decision without opinion, "we review the IJ's opinion and scrutinize its reasoning." <u>Dia v. Ashcroft</u>, 353 F.3d 228, 245 (3d Cir. 2003) (en banc). Review of an IJ's decision is conducted under the substantial evidence standard, which requires that administrative findings of fact be upheld "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); <u>Zheng v. Gonzales</u>, 417 F.3d 379, 381 (3d Cir. 2005). "'[D]eference is not due where findings and conclusions are based on inferences or presumptions that are not reasonably grounded in the record as a whole.'" <u>Balasubramanrim v. INS</u>, 143 F.3d 157, 161 (3d Cir. 1998) (quoting <u>Cordero-Trejo v. INS</u>, 40 F.3d 482, 487 (1st Cir. 1994)).

A.

In her asylum application, Obale stated that she feared persecution by the Cameroonian government based on her political opinions. She and her family had been active in the Southern Cameroon National Counsel ("SCNC"), a group that advocates for greater rights for Anglophone Cameroonians and secession from Cameroon. Natives of the Anglophone regions of Cameroon suffer disproportionately from human rights violations at the hands of the government and its security forces. The 2003 State Department Country Report on Cameroon stated that the Cameroonian government's human rights record is poor, and there have been numerous reports of government forces arresting and detaining opponents of the government for long periods of time without bringing any charges.

Obale testified that she believed that her father, who was the Provincial Chief of National Security in Cameroon's northern province, was executed by government forces for his sympathy for SCNC. Government forces went to Obale's home

15

seeking her father and took him away with them. The day after taking him from the family, Obale's family was informed that her father was dead.

Obale stated that her two uncles, Agbor Jerome and Agbor Bessong, were also active in SCNC. They fled Cameroon and were granted asylum in Germany and the United States, respectively. Agbor Jerome returned to Cameroon and was rumored to have been poisoned by Cameroonian government forces as a result of his SCNC activities.

Obale testified that she was also active in SCNC, which she joined shortly after her father's death. She was an active demonstrator and was arrested and detained three times as a result. She testified that her captors would threaten her and "push," "grab," and "grope" her. In July 1996, she was arrested for participating in a demonstration. She was detained for one night. In March 1997, she was again arrested for demonstrating and was detained for three days. In April 1997, two policemen came to Obale's home and took her to the police station. She alleges that she was threatened and forced to sign a statement promising not to demonstrate again.

Obale also stated that her brother, Nkongho Obale, and sister, Agbor Obale, were involved with the SCNC and were seeking asylum in the United States.[11] Obale's brother's petition for asylum was granted. Her sister's application was deemed time- barred because it was filed more than one year after she had entered the county.[12]

---

[11] Agbor Obale was allegedly Obale's twin sister, though Obale did not initially so testify.

[12] The Government contends that Obale's petition for asylum is also time barred pursuant to 8 U.S.C. § 1158(a)(2)(B); it was filed approximately three years after her visa expired and five years after she entered the country. Neither the IJ nor the BIA made any finding regarding the timeliness of the petition. 8 U.S.C. § 1158(a)(3) provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General" regarding the timeliness of a petition. Because the Attorney General has not

16

The IJ initially expressed an inclination to find Obale credible, but continued Obale's asylum hearing in order to permit the Government to submit Obale's sister and brother's I-589s[13] into evidence. After reviewing Agbor Obale and Nkongho Obale's respective I-589s, the IJ denied Obale's petition for relief. Neither Agbor nor Nkongho made any mention of Obale in their applications. Nkongho's I-589 only referred to the general suffering of the women in his family, with no specific reference to his sisters. Moreover, Obale did not mention Agbor in her I-589.

The IJ concluded that there was "a little credibility problem" stating that "[t]he absence of a reliable proof of the twin is significant, because it would have provide [sic] corroboration that the Court would reasonably expect the respondent to show in support of her claim." App. at 7-8. The IJ also found "implausible [Obale]'s explanation as to how she lost her birth certificate, and could not otherwise obtain another original copy[.]" App. at 5. Therefore, she denied Obale all forms of relief.

B.

The IJ's bases for denying Obale relief are somewhat confusing because the IJ appears to have confused lack of corroboration with lack of credibility. Nonetheless, a close reading of the opinion demonstrates that the IJ made an adverse credibility finding and also found that Obale failed to offer reasonable corroboration for her claim.

The IJ's rejection of Obale's credibility flowed in substantial part from a lack of sufficient corroboration of Obale's claims. While there were some small discrepancies in

_____

made a determination regarding the timeliness of Obale's petition, we will disregard its potential untimeliness and evaluate the merits of the case.

[13] An I-589 is an application for asylum and withholding of removal.

17

Obale's testimony, the IJ's conclusion was mainly based on various areas in which corroboration was lacking–namely in Obale's brother and sister's I-589s and their failure to discuss Obale's persecution.

This court has made clear that "corroboration and credibility, although intuitively related, are distinct concepts that should be analyzed independently." Toure v. Att'y Gen., 443 F.3d 310, 323 (3d Cir. 2006). The IJ's conflation of credibility and corroboration was impermissible. Nonetheless, the IJ's failure to make a valid credibility determination does not affect the result in this case because her reasonable requests for corroboration were inexplicably unmet. As we stated in Chen v. Gonzales, 434 F.3d 212 (3d Cir. 2005), "even a credible asylum applicant may be required to supply corroborating evidence in order to meet [her] burden of proof. If the IJ's decision . . . is supported by substantial evidence in the record, then [her] failure to make a valid credibility determination would not bar this Court's denial of the petition for review without a remand." Id. at 221 (citation and internal quotation marks omitted).

The BIA has adopted rules which require corroboration in instances where it is reasonable to expect such proof from a witness and there is no satisfactory explanation for its absence. These rules were sustained in Abdulai v. Ashcroft, 239 F.3d 542 (3d Cir. 2001), in which this court observed that even where an applicant is credible, corroboration may be required if the applicant is to meet her burden of proof. Id. at 554; see also Chen, 434 F.3d at 221.

The BIA's rule on corroboration involves a three step analysis: (1) an identification of facts for which it is reasonable to expect corroboration; (2) the presence or absence of such corroboration in the record; and (3) the adequacy of applicant's explanation for its absence. In re S-M-J-, 21 I. & N. Dec. 722, 725 (BIA 1997). The third prong presumes that the IJ offers a petitioner an opportunity to explain the absence. See Mulanga v. Ashcroft, 349 F.3d 123, 136 (3d Cir. 2003) (holding that the IJ erred by not alerting the petitioner during the removal proceedings that the absence of corroboration of relevant facts would lead to the denial of her application, thereby giving her an

18

opportunity to explain her inability to corroborate).

The IJ's expectation that Obale's siblings would mention Obale's persecution in her I-589 and thus corroborate her testimony is entirely reasonable. The IJ noted, "[b]ased on the alleged level of persecution [sic] the respondent . . . [t]he court would reasonably expect the brother who testified that he had knowledge of respondent's arrest and detention, to mention it specifically in his I-589[.]" App. at 7. Agbor Obale was Obale's roommate and the two lived together in Delaware. Obale could easily have met the IJ's request for corroboration of her alleged persecution and the existence of a twin sister by having her sibling testify.

The IJ clearly engaged in the first two steps of the analysis by noting the reasonable information she sought and its absence from the record. In addition, she continued the hearing twice specifically in order to have an opportunity to review Obale's siblings' I-589s. She stated, "this is a close case, it really is, right now . . . and that's why I really want to see the . . . siblings [sic] application." A.R. 202. Therefore, Obale was on notice that the contents of these applications were of great import to the IJ and might be dispositive. Nonetheless, she completely failed to provide any explanation for the fact that the asylum applications of her siblings make no reference to her past persecution.

## VI.

Because Obale failed to provide reasonable corroboration of her claim, we will deny her petition for review. Accordingly, the remaining two days in the thirty day period in which Obale may voluntarily depart the United States in accordance with the BIA's order shall begin to run with the issuance of the mandate in this appeal.

_____

19