

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-7-2006

# Chen v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2947

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Chen v. Atty Gen USA" (2006). *2006 Decisions*. Paper 237.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/237

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-2947

TONG JING CHEN,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

PETITION FOR REVIEW OF A DECISION OF
THE BOARD OF IMMIGRATION APPEALS
Agency No. A77-341-668

Submitted Under Third Circuit LAR 34.1(a)
November 6, 2006

Before: SCIRICA, Chief Judge, BARRY and ALDISERT, Circuit Judges

(Opinion Filed: November 7, 2006 )

OPINION

BARRY, Circuit Judge

Petitioner Tong Jing Chen seeks review of a final order of the Board of

Immigration Appeals ("BIA") dismissing his appeal from an Immigration Judge's ("IJ")

order denying asylum, withholding of removal, and relief under the Convention Against Torture. We have jurisdiction under 8 U.S.C. § 1252. We will deny the petition for review.

## I.

Chen, a citizen of the People's Republic of China, entered the United States on December 17, 2000 at the Los Angeles International Airport. An officer of the Immigration and Naturalization Service ("INS") detained and interviewed him. In the interview, Chen represented that he was traveling under a false passport, that he was seeking asylum from China's family planning policy, and that his wife and daughter, Chen Xi, born on August 21, 1998, remained in China.

On December 26, 2000, in his "credible fear" interview, Chen testified that Chinese authorities refused to register his 1998 marriage and refused to register his first child, Chen Xi. He stated that in his village he is permitted to have two children, but due to the state's refusal to register his first child, he cannot legally have a second child. Therefore, he testified, when his wife became pregnant for a second time in July 2000, authorities sought to arrest him and require that either he or his wife be sterilized. As a result, his wife went into hiding and he came to the United States.

At a merits hearing before the IJ on September 20, 2002, Chen's testimony differed materially from his previous statements to INS officials. He testified that he was married on May 22, 1995 and had two children from this marriage: a daughter, Cheng

2

Chen, born on August 21, 1996, and a son, Cheng Jing Wai, born on February 23, 1998. Chinese authorities threatened him with sterilization in 1997, he claimed, and did in fact sterilize his wife in 1999. He attributed his decision to come to the United States to his persecution for having two children. He also testified, for the first time, that Chinese authorities had detained his father because of Chen's unregistered marriage and children.

In a December 5, 2002 oral decision and order, the IJ denied Chen's application for asylum, withholding of removal, and relief under the Convention Against Torture. The IJ cited discrepancies between Chen's three statements, found that several of his explanations and assertions were not credible, and noted that evidence of his wife's alleged sterilization was not competent. In his timely appeal to the BIA, Chen contested the propriety of the IJ's reliance on statements he made at his airport and credible fear interviews, but did not otherwise attempt to explain the inconsistencies in the record. The BIA dismissed the appeal in a December 9, 2004 opinion and order, finding no error in the IJ's reliance on Chen's airport and credible fear interviews. Chen timely petitioned for review of the adverse credibility determination.

**II.**

An alien may qualify for political asylum if he or she can demonstrate past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *Gao v. Ashcroft*, 299 F.3d 266, 271-72 (3d Cir. 2002). Withholding of removal requires the

applicant to establish a clear probability of persecution in the proposed country of deportation. *Gabuniya v. Attorney General*, 463 F.3d 316, 320-21 (3d Cir. 2006). To obtain relief under the Convention Against Torture, an applicant must demonstrate that it is more likely than not that he or she will be tortured in the proposed country of deportation. *Obale v. Attorney General*, 453 F.3d 151, 161 (3d Cir. 2006). Each basis for relief requires, at minimum, credible testimony. *See Gao*, 299 F.2d at 272.

We review adverse credibility determinations for substantial evidence. *He Chun Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004). Credibility determinations must be grounded in reasonable, substantial, and probative evidence of record and supported by specific, cogent reasoning. *Tarrawally v. Ashcroft*, 338 F.3d 180, 184 (3d Cir. 2003); *Abdulrahman v. Ashcroft*, 330 F.3d 587, 597 (3d Cir. 2003). We may not disturb a credibility determination unless no reasonable person would have found the applicant incredible. *He Chun Chen*, 376 F.3d at 222.

Chen faults the IJ for placing too little emphasis on his detailed statement at the merits hearing while focusing on "omissions" in his airport and credible fear interviews. Although we have occasionally expressed skepticism over the reliability of airport interviews, *see Dia v. Ashcroft*, 353 F.3d 228, 257 (3d Cir. 2003), we have found that they may serve as the basis for an adverse credibility determination when the applicant clearly understood the questions posed and his answers went to the heart of his claim. *See He Chun Chen*, 376 F.3d at 224. We also routinely find that statements given during a

credible fear interview may support an adverse credibility determination.

The record reveals not only "omissions," as Chen contends, but key discrepancies that go to the heart of his claim. We think it reasonable to expect an asylum seeker claiming persecution based on his family and marital status to provide consistent answers to such basic questions as the number, names, and approximate ages of his children, the year of his marriage, and whether his wife has been sterilized. Here, however, we find two distinct versions of these key facts. Chen presented the first version in his airport interview. Nine days later, he substantially corroborated his original statement. Then, at the merits hearing nearly two years later, Chen presented a strikingly different picture of his family circumstances. Purported fatigue and nervousness do not explain how, in one version, Chen's wife is pregnant, and in the other, she is sterilized, or how his children's names and ages mysteriously change. Yet Chen offers no other explanation.

In all instances, immigration officials interviewed Chen in either his native language of Foo Chow or in Mandarin, a language he also speaks. Our review of the transcript satisfies us that in each interview, Chen fully understood the questions asked of him. Therefore, we have little difficulty finding that substantial evidence in the record supports the adverse credibility determination.

**III.**

For the foregoing reasons, we will deny the petition for review.