

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-16-2007

# Lian v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4995

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation
"Lian v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1299.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1299

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-4995

———

RONG LIAN,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

———

On Petition for Review of the Board of Immigration Appeals
(BIA File No. A77-958-119)

———

Submitted Under Third Circuit LAR 34.1(a)
February 2, 2007

Before: BARRY and ROTH, *Circuit Judges*,
and IRENAS,* *Senior District Judge.*

(Filed:  April 16, 2007)

———

OPINION

———

IRENAS, *Senior United States District Judge.*

—————————————

* Honorable Joseph E. Irenas, Senior United States District Judge for the District of
New Jersey, sitting by designation.

Petitioner, Rong Lian, seeks review of the decision of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") decision that Petitioner was ineligible for asylum, *see* 8 U.S.C. § 1158*;* withholding of removal, *see* 8 U.S.C. § 1231(b)(3); and relief under the Convention Against Torture ("CAT"), *see* 8 C.F.R. §§ 208.16 and 208.18.[1]  The principal issue is whether Petitioner has sufficiently established past persecution based on his testimony at his removal hearing that his "wife" by "traditional marriage" was forced to undergo an abortion by the Chinese government.  For the following reasons, the Petition will be denied.

I.

Petitioner, a male native and citizen of the People's Republic of China, entered the United States at Los Angeles International Airport in California, on June 4, 2001.  He entered without valid entry documents, which are required by 8 U.S.C. § 1182 (a)(7)(A)(i).[2]  Within a year of his entry, on May 7, 2002, Petitioner applied for asylum.

Petitioner's affidavit in support of his asylum application states that his "girlfriend" was forced to have an abortion.  Likewise, Petitioner told the asylum officer at his interview that the woman forced to abort her pregnancy was his "girlfriend."  At the removal hearing, Petitioner first stated that his marital status was "single," but then

---

[1]  The above cited regulations implement the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1998), 1465 U.N.T.S. 85.

[2]  A person entering the United States without proper documentation is deportable pursuant to 8 U.S.C. § 1227(a)(1).  Petitioner conceded removability at the removal hearing.

testified that he and his "wife" were both persecuted in China. When asked to explain the discrepancy in his testimony, Petitioner stated that he was single in the United States but married in China.

Petitioner further explained that he and his wife were not allowed to legally marry because of marriage age restrictions imposed by the Chinese government.[3] Instead, he testified, the couple had a "traditional marriage" on January 1, 1998. In June, 1998, Petitioner testified, his wife became pregnant.[4] He explained that she went to the hospital where they informed her that she was pregnant. The hospital officials stated that because the couple did not have a marriage license, the pregnancy would be reported to the family planning officials. According to Petitioner, he and his wife received an abortion notice from the family planning officials on July 23, 1998, and a notice of a fine on September 18, 1998. Neither notice was submitted in support of Petitioner's asylum application.

Petitioner testified that on October 15, 1998, while he was out of the house, officials came to his home and took his wife to undergo an abortion. Petitioner stated that he decided to leave China shortly thereafter, to avoid paying the fine assessed for the illegal pregnancy. He stated he first went into hiding sometime at the end of November

---

[3] Petitioner testified that he was 22 years old when he and his wife got married. Calculating from Petitioner's stated date of birth, however, he would have been approximately 17 years old. The IJ noted this discrepancy in his opinion but it is unclear whether Petitioner was questioned about it at the removal hearing.

[4] The IJ noted that Petitioner's asylum application indicated that his girlfriend became pregnant in April, 1998. Petitioner explained at his removal hearing that after completing the application, he spoke to his wife, who reminded him that the correct month was June.

or early December, 1998.  Then in 1999, he attempted to flee China by traveling to Thailand and then Singapore, but was arrested and deported to China. He arrived in China after his deportation without any adverse consequences from the Chinese government.

Petitioner testified he made another attempt to flee China with the help of a "snakehead," which resulted in his arrival in Los Angeles in 2001.  He testified that he borrowed the money needed to pay the snakehead and still owes his creditors approximately $40,000.

The IJ found that Petitioner's testimony lacked corroboration and credibility.  Specifically, the IJ found "absolutely no evidence to corroborate the testimony of the respondent that he was ever married,"  (App. at A-2, p. 13) and further explained, "[t]he Court does not find that he is married, and if, in fact, he has a girlfriend, and, in fact, the girlfriend became pregnant, we have absolutely no proof of that pregnancy."  (Id. at A-2, p. 19)

The IJ also disbelieved Petitioner's testimony at the removal hearing that the woman who was purported to have suffered an involuntary abortion was Petitioner's wife, given Petitioner's previous statements upon his arrival in Los Angeles, in his asylum application, and at his asylum interview, that the woman was his girlfriend.

The IJ further noted that Petitioner's testimony was inconsistent with regard to Petitioner's living situation while he was reportedly married.  Petitioner testified that he began living with his wife a few months before they had their traditional marriage, and was living with her when she became pregnant, yet the household registration booklet

4

Petitioner submitted at the hearing indicated that Petitioner lived with his parents the entire time.

Lastly, the IJ doubted Petitioner's asserted fear of persecution by the Chinese government upon returning to China, noting that Petitioner's testimony suggested his motive for coming to the United States "was solely economic" (App. at A-2, p. 17). The IJ also noted that Petitioner testified that he owed a substantial amount of money to creditors in China whom he could not pay.

Based on the above, the IJ held that Petitioner had not established that he suffered past persecution or held a well founded fear of future persecution. Accordingly, Petitioner's claims for asylum, withholding of removal, and CAT relief were denied. The BIA affirmed. This Petition for Review followed.

## II.

This Court has jurisdiction to review the BIA's final removal order pursuant to 8 U.S.C. § 1252(a). The BIA's one paragraph opinion affirms the IJ's oral opinion and implicitly adopts the IJ's adverse credibility determination. Therefore, we review the BIA's opinion and also the IJ's opinion to the extent it was relied upon by the Board. *Xie v. Ashcroft,* 359 F.3d 239, 242 (3d Cir. 2004).

Factual determinations, such as whether an applicant seeking asylum and withholding of removal demonstrated past persecution or threat of future persecution, will be upheld if supported by substantial evidence. *Xia Yue Chen v. Gonzales*, 434 F.3d 212, 216 (3d Cir. 2005). Denials of CAT relief are also subject to substantial evidence review.

5

*Zubeda v. Ashcroft*, 333 F.3d 463, 471 (3d Cir. 2003). "If a reasonable fact finder could make a particular finding on the administrative record, then the finding is supported by substantial evidence. Conversely, if no reasonable fact finder could make that finding on the administrative record, the finding is not supported by substantial evidence." *Berishaj v. Ashcroft*, 378 F.3d 314, 322-23 (3d Cir. 2004) (quoting *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003)(en banc)).

Adverse credibility determinations are reviewed under the substantial evidence standard and thus must be upheld "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Xia Yue Chen*, 434 F.3d at 216 (citing 8 U.S.C. § 1252(b)(4)(B)). Such determinations should be based on "inconsistent statements, contradictory evidence and inherently improbable testimony," regarding matters going to "the heart of the asylum claim." *Id.* The reviewing court should "defer to and uphold the IJ's adverse credibility determinations if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Id.* (citing *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)) (internal citation omitted).[5]

A.

Pursuant to 8 U.S.C. § 1158(b), asylum may be granted to an alien who is a

---

[5] The REAL ID Act of 2005 changed the standard for credibility determinations. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). However, the change was prospective, and does not apply to Petitioner's case, as his asylum application was filed in 2002.

"refugee" as defined by 8 U.S.C. § 1101(a)(42). Section 1101(a)(42)'s definition of

"refugee" includes "any person who is outside any country of such person's nationality . .

. and who is unable or unwilling to return to, and is unable or unwilling to avail himself or

herself of the protections of that country because of persecution on account of race,

religion, nationality, membership in a particular social group, or political opinion."

Subsection (a)(42) continues,

> For purposes of determinations under this chapter, a person who has
> been forced to abort a pregnancy or to undergo involuntary sterilization,
> or who has been persecuted for failure or refusal to undergo such a
> procedure or for other resistance to a coercive population control
> program, shall be deemed to have been persecuted on account of
> political opinion, and a person who has a well founded fear that he or
> she will be forced to undergo such a procedure or subject to prosecution
> for such failure, refusal, or resistance shall be deemed to have a well
> founded fear of persecution on account of political opinion.

In *Matter of C-Y-Z*, the BIA interpreted subsection (A)(42)'s definition to

encompass legal spouses of persons who suffered forced abortion or sterilization.[6] 21 I.

& N. Dec. 915 (BIA 1997) (en banc). In *Cia Luan Chen v. Ashcroft*, 381 F.3d 221, 225-

27 (3d Cir. 2004), this Court, without ruling on whether the BIA's interpretation in *C-Y-Z*

was permissible,[7] held that asylum applicants engaged to a person subject to forced

---

[6] The applicant in *Matter of C-Y-Z* registered his marriage with the Chinese government. 21 I. & N. Dec. 915, 915 n.1 (BIA 1997).

[7] While a square ruling on *C-Y-Z* was not necessary given the factual distinctions between the cases, *Cia Luan Chen* calls into question the BIA's reasoning in even extending protection to spouses, noting that one of the two possible rationales "is not without difficulties," and the other "takes some effort to reconcile . . . with the language of [the statute]." 381 F.3d at 225-26. *Cf. Shi Liang Lin v. United States DOJ,* 416 F.3d 184, 192 (2d Cir. 2005)(remanding

abortion or sterilization are not deemed to have suffered persecution on account of political opinion.

If it were not for the IJ's factual finding in this case that Petitioner was not married at all (i.e. not even married in a traditional ceremony), we might squarely address an issue falling somewhere in between the questions presented in *C-Y-Z* and *Cai Luan Chen*: whether "spouses" not legally recognized as such-- indeed, *barred* from legally marrying at the time they purported to marry-- are included in the definition of refugee, and therefore eligible for asylum.[8]  Instead, we need only decide whether the IJ's finding that

consolidated cases to the BIA for clarification of *C-Y-Z*, explaining, "because the BIA has never adequately explained its rationale for establishing spousal eligibility under IIRIRA § 601(a), we cannot reasonably determine the status of boyfriend and fiance eligibility under IIRIRA § 601(a). Of course, it may be the case that permissible distinctions can be drawn between spousal eligibility, on the one hand, and boyfriend and fiance eligibility, on the other.  It may also be the case, however, that the rationale for spousal eligibility applies with equal logic and force to the eligibility of boyfriends and fiances.  Until the BIA has clarified why it established spousal eligibility in the first instance, we cannot know.").

[8] The Ninth and Seventh Circuits have clearly held that spouses married in a traditional ceremony because China's age restrictions prevented a legal marriage are eligible for asylum under § 1101(a)(42).  *See Zhang v. Gonzalez,* 434 F.3d 993, 999 (7th Cir. 2006); *Ma v. Ashcroft*, 361 F.3d 553, 559 (9th Cir. 2004).  The reasoning of both opinions at least partially relies upon the premise that China's marriage age restrictions are part of China's coercive population control policies and may themselves constitute persecution. However, that very premise was unfavorably discussed in *Cai Luan Chen*, 381 F.3d at 230, 232 ("[A]lthough minimum marriage ages of 23 and 25 are contrary to our traditions and international practice, we cannot go so far as to say that enforcement of these laws necessarily amounts to persecution.  American constitutional law recognizes marriage as a fundamental right but all states impose minimum marriage age requirements. . . . Laws setting reasonable minimum marriage ages are also recognized as legitimate and desirable under international human rights law. . . . we see no basis for concluding that Congress's intent in amending  § 1101(a)(42) was to afford relief to *every* person who is a victim of *any* rule or practice that forms a part of the Chinese population control

the woman was merely Petitioner's girlfriend was supported by substantial evidence. We hold that it was.

As explained by the IJ, Petitioner consistently referred to the woman as his "girlfriend" until the removal hearing. Evidence in the record also demonstrated that Petitioner lived with his own family during the time he was purportedly married, casting some additional doubt on whether he was actually married. Thus, the IJ's adverse credibility determination was based on substantial evidence, and a reasonable adjudicator would not be compelled to conclude to the contrary.

Because the IJ's adverse credibility determination with respect to Petitioner's marriage is supported by substantial evidence, *Cai Luan Chen* controls our decision in this case. Boyfriends of women subjected to involuntary abortions are not eligible for asylum. *Cai Luan Chen*, 381 F.3d at 222-23. Accordingly, the Petition will be denied as to the asylum claim.

## B.

Petitioner also seeks review of the IJ's decision denying Petitioner's applications for withholding of removal and CAT protection. With respect to withholding of removal, the statute provides, "the Attorney General may not remove an alien to a country if the Attorney General decides that an alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social

---

program.")(emphasis in original; citations omitted) .

group, or political opinion." 8 U.S.C. § 1231(b)(3).  Notably, unlike the asylum standard, withholding of removal does not allow an alien to obtain relief based on a well founded fear of persecution.  To obtain withholding of removal, an alien must prove that there is a "clear probability" that his "life or freedom would be threatened upon [his] removal."  *Xia Yue Chen*, 434 F.3d at 216 (citing *INS v. Stevic,* 467 U.S. 407, 412 (1984); 8 U.S.C. § 1231(b)(3)(A)).  Therefore, as this Court has held countless times before, "[a]n applicant who does not qualify for asylum does not qualify for withholding of removal."  *Obale v. Attorney General,* 453 F.3d 151, 161 (3d Cir. 2006).  For the same reasons Petitioner has failed to establish his eligibility for asylum, he has also failed to establish eligibility for withholding of removal.

Similarly, the CAT requires relief from removal only if the alien can show that it "is more likely than not that he or she would be tortured if removed."  8 C.F.R. § 208.16(c)(2).  Torture is defined as "'an extreme form of cruel and inhuman treatment,' but not 'lesser forms of cruel, inhuman or degrading treatment.'" *Xia Yue Chen*, 434 F.3d at 216 (citing 8 C.F.R. § 208.18).  As articulated above, Petitioner has presented no credible evidence that he will be subject to persecution, much less torture, upon his return to China.

Accordingly, the Petition for withholding of removal and protection under the CAT will be denied.