**Chafik SEBKI, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES.**

No. 09–2427.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) April 21, 2010.

Opinion Filed: April 23, 2010.

---

Danielle L. Bolden, Esq., Elissa C. Steglich, Esq., American Friends Service Committee, Newark, NJ, for Petitioner.

Theodore C. Hirt, Esq., United States Department of Justice Office of Immigration Litigation, Eric H. Holder, Jr., Esq., Thomas W. Hussey, Esq., W. Daniel Shieh, Esq., United States Department of Justice, Washington, DC, for Attorney General of the United States.

Before: FUENTES, ROTH and VAN ANTWERPEN, Circuit Judges.

## OPINION

PER CURIAM.

Chafik Sebki, a native and citizen of Algeria, seeks review of a final order of removal entered by Board of Immigration Appeals ("BIA"). We will deny the petition for review.

### I.

Sebki, currently age forty-one, entered the United States in 1993 on a tourist visa and overstayed. The Department of Homeland Security ("DHS") served a Notice to Appear in 2007. Sebki conceded removability under INA § 237(a)(1)(B), and he applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). He also asked at an initial calendar hearing that he be considered for voluntary departure. Sebki claims that he was persecuted in Algeria, and fears returning there, mainly due to confrontations that he had with Islamic extremists while he was an active member of a secular political party called the *Front des Forces Socialistes* ("FFS"). Sebki also claims to have suffered persecution due to his Berber ethnicity.

The Immigration Judge ("IJ") rejected the asylum application as untimely filed, and denied withholding of removal and CAT relief. With regard to withholding, the IJ found insufficient evidence to establish past persecution on the basis of ethnicity or political opinion, and no showing that it is more likely than not that Sebki would be targeted for harm upon return to Algeria. The IJ did not expressly address the issue of voluntary departure. On Sebki's appeal, the BIA agreed with the IJ's analysis and denied relief. The BIA further held that the request for voluntary departure was waived due to Sebki's failure to present any evidence to establish his prima facie eligibility for that relief. Sebki timely filed a petition for review in this Court.

### II.

We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review the denial of Sebki's

withholding of removal and CAT claims.[1] "[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." *Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir.2004). We review determinations regarding withholding of removal and CAT relief under the substantial evidence standard, and we will not disturb those findings "unless the evidence not only supports a contrary conclusion, but compels it." *Zhang v. Gonzales*, 405 F.3d 150, 155 (3d Cir.2005) (quotation marks omitted).

Sebki earned a degree in nursing in Algeria and began working at a hospital in Algiers in 1991. He also joined the FFS, an opposition political party, in 1991. Sebki attended party meetings, sought to promote the FFS's agenda, and organized an FFS chapter at the hospital. His father, a retired professor who remains in Algeria, also was an FFS official.

Sebki related three primary incidents of past harm in Algeria stemming from his political activities. First, in September 1992, Sebki and others had a confrontation with a rival political party, the Islamic Salvation Front ("FIS"), after fundamentalist members of the FIS sought to take control of the hospital mosque. Sebki was pushed from the mosque, and an FIS member threatened to have Sebki shot if he failed to leave. Following this incident, Sebki was warned by two colleagues at the hospital that the FIS was threatening his life. Sebki ceased his political activities out of fear for his safety.

Second, two unidentified men on the street, whom Sebki believed were Muslim extremists, pointed their fingers at Sebki and stared at him. Sebki felt threatened by their actions. Third, in early 1993, Sebki caused the arrest of two men "wearing Islamic clothing" after he found those men trying to steal supplies from the hospital pharmacy. Once it became known at the hospital that Sebki had caused the arrest, Sebki feared for his safety. In July 1993, he arrived in the United States. Although the Algerian government dissolved the FIS in 1992, Sebki claims to fear returning to Algeria mainly because FIS members or other Muslim extremists would seek revenge against him.

"The threshold for establishing eligibility for withholding of removal is higher than that for establishing entitlement to asylum and requires the alien to demonstrate a 'clear probability' that, upon removal to the country of origin, his or her 'life or freedom would be threatened on account of one of the statutorily enumerated factors.'" *Obale v. Att'y Gen.*, 453 F.3d 151, 161 (3d Cir.2006) (quoting *Senathira-*

---

1. We lack jurisdiction to review the asylum claim because Sebki's application was denied as untimely filed. *See Tarrawally v. Ashcroft*, 338 F.3d 180, 185 (3d Cir.2003). While Sebki argues that we should review as a "question of law" the finding that he failed to show extraordinary circumstances to excuse his late filing, our case law is clear that we lack jurisdiction. *See Jarbough v. Att'y Gen.*, 483 F.3d 184, 189 (3d Cir.2007) ("challenges to the BIA's extraordinary or changed circumstances determinations do not constitute 'questions of law' within the meaning of [8 U.S.C.] § 1252(a)(2)(D)").

We also lack jurisdiction to review the denial of voluntary departure. *See* 8 U.S.C. § 1229c(f); *Obale v. Att'y Gen.*, 453 F.3d 151, 156 (3d Cir.2006). Sebki argues that the BIA "failed to properly review the record" and erred in finding that he failed to state a prima facie case for voluntary departure, thereby working a denial of "due process." However, "[r]ecasting challenges to factual or discretionary determinations as due process or other constitutional claims is clearly insufficient to give this Court jurisdiction[.]" *Jarbough*, 483 F.3d at 190. We thus reject Sebki's jurisdictional argument. We note, in any event, that we discern no error in the BIA's decision given Sebki's clear failure to establish his prima facie eligibility for voluntary departure.

*jah v. INS,* 157 F.3d 210, 215 (3d Cir. 1998)). The clear probability standard is met if petitioner shows that it is more likely than not that he will suffer persecution. *Miah v. Ashcroft,* 346 F.3d 434, 439 (3d Cir.2003). Persecution includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom," but it "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Fatin v. INS,* 12 F.3d 1233, 1240 (3d Cir.1993).

■ We cannot conclude that the record compels a finding that Sebki is entitled to withholding of removal. As the BIA noted, Sebki was never threatened, mistreated, or abused by the Algerian government, either on account of his ethnicity or his activities with the FFS. In addition, while Sebki was threatened at the hospital during the mosque incident, the FIS was later banned by the Algerian government, and Sebki was unharmed during the several months that he remained in Algeria prior to his departure. In general, unfulfilled threats qualify as persecution "only in the most extreme circumstances, such as where they are of a most immediate or menacing nature or if the perpetrators attempt to follow through on the threat." *Bejko v. Gonzales,* 468 F.3d 482, 486 (7th Cir.2006). We reject Sebki's argument that the threats he received compel the conclusion that he suffered persecution on account of his political activities.

The record also supports the determination that Sebki lacks an objective basis for his alleged fear of future persecution at the hands of the men whom he caused to be arrested in 1993, or by others who allegedly would be interested in harming Sebki due to his past activities. As the IJ noted, Sebki's fear is based largely upon speculation offered by Sebki and his family members regarding the purported on-going desire of unidentified individuals to harm Sebki. As noted, Sebki was unharmed in Algeria after the threat he received in 1992, and he cites no specific evidence to establish that anyone in particular remains interested in harming him now. Further, as the BIA noted, Sebki's father, a former FFS official, has remained in Algeria without incident. In short, the record does not compel the conclusion that Sebki more likely than not faces future persecution.[2]

■ Finally, we discern no basis to disturb the finding that Sebki fails to qualify for CAT protection. Sebki claims to fear torture in Algeria, citing evidence in the 2005 State Department Report that torture remains a significant human rights problem. He also cites the Algerian government's amnesty program, which he claims has resulted in the release of many "Islamic militants" from prison. Petitioner's Br. at 21. However, as respondent notes, the State Department Report also reflects that Algerian police "were generally effective at maintaining order throughout the country," and that "[l]ow levels of corruption existed," which undermines Sebki's claim that the police would ignore threats of torture by Islamic militants. After a careful review of the record, we find substantial evidence to support the finding that Sebki failed to show it more likely than not that he would be tortured in Algeria. *See Zubeda v. Ashcroft,* 333 F.3d 463, 471 (3d Cir.2003).

---

**2.** Sebki argues that the "country conditions documentation" shows a pattern or practice of persecution against Berber members of the FFS. Petitioner's Br. at 19. Sebki failed, however, to present this pattern or practice argument to the BIA, and thus we lack jurisdiction to review it. *See* 8 U.S.C. § 1252(d)(1); *Lin v. Att'y Gen.,* 543 F.3d 114, 120 (3d Cir.2008).

## III.

For the foregoing reasons, we will deny the petition for review.