

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-6-2007

# Eti v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4545

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Eti v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1527.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1527

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4545
_____

ETI,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

Respondent

.

_____

On Petition for Review of an Order
of the Board of Immigration Appeals
(BIA No. A 96 257 816)

Immigration Judge: Miriam K. Mills
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 23, 2007

BEFORE: SCIRICA, Chief Judge, FUENTES and CHAGARES, Circuit Judges.

(Filed: March 6, 2007)

_____

FUENTES, <u>Circuit Judge</u>.

Eti challenges the Board of Immigration Appeals' denial of her application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture.[1]  For the reasons that follow, we will deny the petition.

**I.**

Eti is a Chinese Christian citizen of Indonesia.  She was born in 1970 on the island of Sumatra.  Eti came to the United States on February 9, 2002, overstayed her visa, and applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") on February 7, 2003.

At her hearing before an immigration judge ("IJ"), Eti testified that during her childhood, she and her family were harassed by native Indonesians because they were ethnically Chinese.  On one occasion, a native Indonesian attempted to rape her sister and then stabbed her brother leaving him blind in one eye.  When she was seven years old, her father was fatally poisoned by a neighboring business owner and, according to Eti, the authorities did not investigate the matter.  As a teenager, she often was harassed on public transportation by men who sometimes fondled her breasts.  During her last year of high

---

[1] On her I-589 application, petitioner listed "Eti" as her first name and stated "N/A" for her last name.  A.R. 366.

school, a native Indonesian pulled her skirt up at a local market, and the police refused to help her. The following year, a native Indonesian man grabbed her breast and laughed at her. During riots in May 1998, a group of men carrying weapons approached her saying they were going to beat up a Chinese girl. A policeman helped her escape back to a home protected by her landlord where she hid in the attic for three days. In addition, two of her family's businesses were burned down during the riots.

Eti also claims that she was persecuted on the basis of her religion. She became a Christian in 1990 and subsequently had trouble finding a place to live because people would not rent to Christians. When she did find a place, Muslims threw stones at her house and broke the windows. Eti also described an incident where native Indonesians vandalized a funeral home and defaced the body of her friend's mother. In December 2001, while traveling with a Christian music group, she was approached by men who threatened to assault her because of her religion. She fell as she was running away and injured herself. Soon before she left the county, Muslim neighbors destroyed a wall her family had built. Eti also testified that although some of her family is Christian, two of her brothers have converted to Islam to avoid persecution.

In addition, a minister named Bruce McDowell testified at the hearing about Eti's involvement with his church in Philadelphia. Finally, Leonard Swidler, professor of religion at Temple University, testified that religious tensions in Indonesia were greater than the U.S. State Department reports indicated and that he believed Eti was at high risk of suffering harm if she returned.

The IJ denied Eti's application for relief, and the Board of Immigration Appeals ("BIA") affirmed without an opinion. The IJ determined that Eti's testimony was not entirely consistent or credible. First, the IJ noted that Eti described the incident during the May 1998 riots as the worst example of her persecution, but then later testified that the incident while touring with her music group was the worst harm she suffered. Second, the IJ observed that Eti had not included the Christian music group incident in her I-589 application. The IJ did not believe that Eti offered any reasonable explanation for these inconsistencies.

In addition, the IJ concluded that the incidents Eti described did not constitute past persecution or provide a reasonable basis upon which to fear future persecution. The IJ stated that conditions in Indonesia had improved for ethnic Chinese citizens, and noted that Eti lived in Indonesia for almost four years after the 1998 riots. In terms of her claims based on religion, the IJ explained that Eti's mother and sister both attend church regularly and that conditions had improved in Indonesia for Christians.

**II.**

We have jurisdiction to review the BIA's order under 8 U.S.C. § 1252. When the BIA summarily affirms an IJ's decision, we consider the IJ's decision. Partyka v. Attorney Gen. of the United States, 417 F.3d 408, 411 (3d Cir. 2005). We review the IJ's factual and discretionary determinations, including credibility findings, under a substantial evidence standard. See Sukwanputra v. Gonzales, 434 F.3d 627, 636 (3d Cir. 2006). "If a reasonable fact finder could make a particular finding on the administrative

record, then the finding is supported by substantial evidence." Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003). The IJ's findings finding "must be upheld unless the evidence not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001).

### III.

Eti's only argument on appeal is that the IJ failed to properly consider whether there is a "pattern and practice" of persecution against ethnic Chinese and Christians in Indonesia. As Eti notes, applicants for asylum can establish a well-founded fear of future persecution by showing "that there is a pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.13(b)(2)(iii)(A). We have explained that "to constitute a 'pattern or practice,' the persecution of the group must be systemic, pervasive, or organized." Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005) (internal quotation marks omitted). Acts of "violence or other harm perpetrated by civilians against the petitioner's group [do] not constitute persecution unless such acts are committed by the government or forces the government is either unable or unwilling to control." Id. (internal quotation marks omitted).

We agree with Eti that the IJ could have more fully discussed the possibility of a pattern and practice, especially with regard to religious persecution. For example, while the 2003 International Freedom Report for Indonesia does note that there have been

5

advances in interreligious cooperation, it also describes a government which has "on many occasions failed to punish perpetrators and further attacks" and that has "at times tolerated the abuse of religious freedom by private groups." App. 48. Nevertheless, the IJ did consider the reports and other materials submitted by Eti and concluded that she did not have a well-founded fear based on general conditions in Indonesia. Although the evidence presented establishes that religious violence in Indonesia remains a significant problem, we do not believe the record compels the conclusion that there is a pattern and practice of persecution. The IJ's determination that Eti had not established a well-founded fear of persecution is therefore supported by substantial evidence.[2]

We also agree with the IJ that Eti does not qualify for withholding of removal or protection under CAT. Eti did not demonstrate a "clear probability" of persecution if removed, see INS v. Stevic, 467 U.S. 407, 413 (1984), and she has not argued on appeal that she qualifies for protection under CAT, *i.e.*, that it is more likely than not that she will be tortured if removed, see Ayuk Ako Obale v. Attorney Gen. of the United States, 453 F.3d 151, 161 (3d Cir. 2006).

**IV.**

---

[2] We note that substantial evidence also supports the IJ's determination that Eti did not establish a well-founded fear of being individually targeted for persecution in Indonesia. Eti does not appear to challenge this determination on appeal, though she does argue that the IJ's adverse credibility finding was error. However, Eti's failure to mention the Christian music group incident in her I-589 application was noteworthy both because she testified that it was the "worst" incident she experienced and because it occurred within a couple of months of when she left Indonesia.

Eti has failed to demonstrate that the BIA or IJ erred in rejecting her application for asylum, withholding of removal, and relief under CAT. For the reasons discussed above, we will deny the petition.