**Sukhvinder SINGH, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 06–2569.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a) Sept. 11, 2007.

Filed: Oct. 16, 2007.

Michael S. Henry, Stephen E. Niksa, Law Offices of Michael S. Henry, Philadelphia, PA, for Petitioner.

Jonathan Potter, Christopher T. Dong, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

BEFORE: SCIRICA, Chief Judge, RENDELL and FUENTES, Circuit Judges.

## OPINION OF THE COURT

FUENTES, Circuit Judge.

Petitioner Sukhvinder Singh, an Indian citizen, entered the United States on August 28, 1999, as a non-immigrant visitor. On November 9, 2001, he was served with a Notice to Appear, which charged him with being an alien who had remained in the United States without authorization in violation of 8 U.S.C. § 1227(a)(1)(B). Singh conceded removability, and subsequently applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture. After a hearing, the immigration judge (the "IJ") denied relief, and the Board of Immigration Appeals ("BIA") affirmed. Singh filed a timely petition for review. We have jurisdiction pursuant to 8 U.S.C. § 1252, and we will deny the petition for the reasons that follow.

### I.

In his application and at his hearing before the IJ, Singh testified to the following facts. Singh stated that he was born in Jind, India, and that he is 42 years of age. He identified himself as a member of the Sahajdhari sect of the Sikh religion. He stated that, as a child, he was a member of the Kashdhari sect of the Sikh religion; he described the Kashdhari as those who "ha[ve] the appearance of a full Sikh and [ ] go to gurdwara." (J.A. 36). Singh stated that he became a Sahajdhari Sikh in 1989, and cut his hair at that time. He also stated that he is currently a practicing Sikh, and provided the court with a letter from the Philadelphia Sikh Society attesting to this fact.

Singh proceeded to testify that he had been persecuted throughout his life, in his hometown and in other areas of India, because of his status as a Sikh. The first

incident he described took place on June 7, 1984, in the aftermath of an attack by Indian police on the Golden Temple. Singh testified that he had been arrested along with his cousin, Kuldeep, and two other Sikh students; Singh stated that his three companions were members of the All India Sikh Student Federation, an organization that supports the creation of Khalistan (a proposed state within the current territorial bounds of India for members of the Sikh religion). Singh testified that following his arrest, he was taken to two separate police stations and beaten in each location, the second time into a state of unconsciousness. The release of the four men was secured by family members who bribed local police with a sum of 100,000 rupees. Singh further testified that, at the same time as his arrest, Hindus targeting Sikhs in the aftermath of the attack on the Golden Temple raped and killed his aunt, and killed his aunt's two children, his uncle and his grandfather.

Singh testified to a second incident which took place on December 16, 1987, when police raided his house because he was hiding his cousin Kuldeep and two other members of the All India Sikh Student Federation. All four were arrested; Kuldeep was transferred elsewhere and Singh testified that he never heard from Kuldeep again. Singh further claims he was held prisoner for two or three days, was beaten on several occasions, and was falsely charged with robbery. According to his testimony, Singh posted bail and then fled town before he was to stand trial for the trumped-up charge. He stayed away for three to four years, living during that period with family in an area named Uttar Pradesh.

Singh testified that he was later forced to flee Uttar Pradesh when police orchestrated raids on Sikhs living there; he next settled in the city of Ganganar. In July 1996, Singh's fugitive status led to his arrest, though he was able to exonerate himself and was released in August 1996. At that time he returned to Jind, where he was rearrested a few days later by Prithvi Singh Saini, the same police official who had originally arrested him in 1984 and 1987. After bribing the police with 50,000 rupees, he was set free.

In 1999, Prithvi Singh Saini was promoted to Deputy Superintendent of Police in Singh's hometown. Singh testified that his father told him to flee to Delhi, which he did in March of 1999; he further testified that the Jind police came to his home looking for him shortly after he fled. Singh stated that his father arranged for him to get a passport and visa to the United States in May of 1999.

The IJ denied Singh's application for relief, finding that much of his story was either exaggerated or not credible. He noted that Singh provided no evidence of any kind (i.e., medical records, an affidavit from Singh's counsel in India) to support his account of the repeated arrests and beatings. He also noted that the affidavit executed by Singh's father makes no mention of the severe beatings that allegedly took place while Singh was in police custody. The IJ then pointed to numerous inconsistencies between Singh's testimony at the hearing and the affidavit Singh provided to the court prior to the hearing (i.e., the length of time Singh remained in Jind following his release from prison in 1987); he also pointed to logical discrepancies in Singh's testimony at the hearing (i.e., providing conflicting accounts of how long he remained in Uttar Pradesh). Finally, the IJ concluded that Singh's claim that he is a practicing Sikh was not entirely credible; the IJ indicated that if Singh was a "genuine Sikh," he would have resumed dressing as one once in the United States (by wearing a turban and allowing his hair to

grow), and that Singh's explanation that he feared persecution by the police since the events of September 11, 2001, did not constitute an explanation for why Singh also did not wear a turban and his hair long prior to that date (as Singh admitted he did not). (J.A. 19–20.)

The IJ further stated that even if he did find Singh's testimony regarding the arrests and his religion to be credible, he did not believe that Singh's alleged persecution was the result of his status as a Sikh, but stemmed primarily from his association with his cousin, Kuldeep; that association directly "led to all of [Singh's] arrests." (J.A. 20.) Consequently, Singh's mistreatment by the police was not "on account" of one of the five grounds enumerated in the Immigration and Nationality Act (i.e., Singh's race, religion, nationality, membership in a particular social group, or political opinion).

Finally, the IJ found that "the situation in India with regard to Sikhs has changed significantly," noting that the Prime Minister of India is a member of the Sikh religion. (J.A. 22.) As such, the IJ determined that Singh would not be subject to further persecution should he be returned to India.

Following an appeal, the BIA adopted and affirmed the IJ's opinion.

## II.

We review the decision of the IJ because the BIA deferred to it. *See Miah v. Ashcroft,* 346 F.3d 434, 439 (3d Cir.2003). We review the IJ's findings, including adverse credibility determinations, under the substantial evidence standard. *Chen v. Ashcroft,* 376 F.3d 215, 222 (3d Cir.2004). "If a reasonable fact finder could make a particular finding on the administrative record, then the finding is supported by substantial evidence." *Dia v. Ashcroft,* 353 F.3d 228, 249 (3d Cir.2003). The IJ's find-

ings "must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft,* 242 F.3d 477, 483–84 (3d Cir.2001).

On appeal, Singh challenges the IJ's decision to deny him asylum, withholding of removal, and relief under the United Nations Convention Against Torture; he also contends that the IJ's behavior during his asylum hearing was violative of due process. We address each in turn.

## A. Asylum

In order to be eligible for a grant of asylum, a petitioner must establish him or herself as a "refugee," meaning a "person who is outside any country of such person's nationality ... and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). *See, e.g. Miah,* 346 F.3d at 438. To demonstrate past or future persecution, an applicant must provide evidence of "past or potential harm rising to the level of persecution on account of a statutorily enumerated ground that is committed by the government or by forces the government is unable or unwilling to control." *Kibinda v. Attorney General,* 477 F.3d 113, 119 (3d Cir.2007) (quotation omitted). A petitioner who offers "credible testimony regarding past persecution is presumed to have a well-founded fear of future persecution." *Berishaj v. Ashcroft,* 378 F.3d 314, 326 (3d Cir.2004).

We find that substantial evidence supports the IJ's conclusion that Singh's testimony regarding his past persecution in India was not credible. As described in Section I, *supra,* the IJ noted a number of instances where Singh's testimony was inconsistent. The IJ also observed that

Singh did not provide any evidence to corroborate his allegations that he was severely beaten while in police custody; Singh did not submit medical records of his injuries, nor affidavits of persons who would have had information about those events (*i.e.*, no affidavit was submitted by an attorney named Sindhwani hired by Singh's family to help defeat the allegedly trumped-up charges against him). While Singh did provide an affidavit from his father (who, according to Singh's testimony, was aware of all of the alleged arrests and beatings), that affidavit merely stated that the local police "used to harass" Singh and "wanted to malign his reputation in the city by involving him in false cases." (Administrative R. 251). The affidavit does not describe any specific instances of abuse or torture. Moreover, even if the events described by Singh's father in his affidavit did take place, such incidents of "harassment" do not rise to the level of persecution. *See Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir.1993) (stating that persecution "include[s] threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom."). For these reasons, we agree with the IJ's credibility determination.

A petitioner such as Singh who fails to demonstrate past persecution may still qualify for asylum by showing that he or she "has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion if returned to his or her native country." *Lukwago v. Ashcroft*, 329 F.3d 157, 174 (3d Cir.2003). There is substantial evidence to support the IJ's finding that Singh cannot demonstrate a well-founded fear of persecution based on his status as a Sikh if returned to India. The IJ properly relied on the current *Country Report* and *International Religious Freedom Report* for India from the State Department in reaching this conclusion; neither report indicates that Sikhs in India are currently the target of persecution. Moreover, as the IJ observed, and Singh confirmed, the current Prime Minister of India is a Sikh.[1]

For these same reasons, substantial evidence supports the IJ's denial of withholding of removal, as Singh has not demonstrated a "clear probability" of persecution if removed. *See INS v. Stevic*, 467 U.S. 407, 413, 425, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). Finally, Singh does not qualify for protection under the Convention Against Torture because he has not shown that it is more likely than not that he will be tortured if removed. *See Obale v. Attorney General*, 453 F.3d 151, 161 (3d Cir. 2006).

**B. Due Process**

Singh argues that the IJ deprived him of his right to due process during the removal hearing.[2] A full and fair hearing is one that provides the petitioner with a "neutral and impartial arbiter[ ]" of the merits of his or her claim and "a reasonable opportunity to present evidence on [his or her]

---

1. The IJ also stated, as noted earlier, that he did not believe that Singh was a "genuine Sikh." As we agree with the IJ's credibility determination and conclusions regarding Singh's alleged past persecution and fear of future persecution, we decline to address the question of whether substantial evidence supports the IJ's finding as to Singh's religious status.

2. Though Singh never made a specific "due process" argument in his appeal to the BIA, he raised substantive allegations which, if true, would constitute a violation of due process. *See Abdulrahman v. Ashcroft*, 330 F.3d 587, 595 n. 5 (3d Cir.2003) ("While [petitioner's] appeal to the [BIA] did not frame the matter in due process terms in so many words, both his notice of appeal and his later brief to the [BIA] argued that the IJ impermis-

behalf." *Cham v. Attorney General*, 445 F.3d 683, 691 (3d Cir.2006) (quoting *Abdulrahman v. Ashcroft*, 330 F.3d 587, 596 (3d Cir.2003)). To be considered "neutral and impartial," an IJ must base his or her decision on the evidence rather than on "[his or] her own speculative beliefs," and avoid becoming an advocate for either party. *Abdulrahman*, 330 F.3d at 596 n. 5, 596. We review de novo the issue of whether Singh was denied due process. *See id.* at 595–96.

Singh claims that the IJ did not act as an impartial arbiter for two reasons. First, Singh asserts that the IJ "refus[ed] to take testimony from the Petition[er] on the Sikh religion" before determining that Singh was not a "genuine" Sikh. (Pet. Brief.34.) Second, Singh contends that certain remarks made by the IJ during what Singh has described as the IJ's "post-decision tirade" gave the appearance that the IJ had a predisposition to find against Singh. *Id.* Singh particularly objects to the IJ's speculative suggestion that the police may have sought out his cousin Kuldeep because he was a "terrorist." *Id.*; J.A. 164.

The record clearly indicates that the IJ did not always address Singh in a respectful manner, and expressed a unwarranted level of irritation with Singh's testimony. However, a "lack of courtesy and the absence of the expected level of professionalism does not necessarily amount to a violation of due process." *Abdulrahman*, 330 F.3d at 597. Singh's contention that he was not permitted to testify to aspects of the Sikh religion is not supported by any direct cites to the record. While the IJ did ask Singh's attorney to scale back on his questioning regarding the Sikh religion and focus on the claim at hand, Singh was permitted to testify to the practices of different Sikh sects and his own experiences as a Sikh at a number of points

during the hearing. Furthermore, while certain speculative comments made by the IJ during the course of the hearing were unnecessary and regretful, "in the context of the record as a whole there is insufficient evidence to conclude that the overall proceedings were biased in violation of [Singh's] right to due process." *Abdulrahman*, 330 F.3d at 596. This Court therefore finds that the IJ's behavior on the whole does not rise to a level that would constitute a deprivation of Singh's right to a full and fair hearing.

### III.

Singh has failed to demonstrate that the IJ or BIA erred in rejecting his application for asylum, withholding of removal, and relief under the Convention Against Torture. He has similarly failed to demonstrate a denial of due process by IJ Ferlise. For the reasons discussed above, we will deny the petition.

sibly based her decision on her own specula-    tive beliefs rather than on the evidence.").