## WEI–CHAI WANG, Petitioner

### v.

### ATTORNEY GENERAL OF the UNITED STATES, Respondent.

### No. 06–2293.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) Oct. 22, 2007.

Filed: Oct. 24, 2007.

Eleanor H. Chen, Philadelphia, PA, for Petitioner.

Lyle D. Jentzer, Christopher T. Dong, United States Department of Justice, Office of Immigration Litigation, Eric J. Heimann, United States Department of Justice, Environmental Crimes Section, Washington, DC, for Respondent.

Before: SLOVITER, CHAGARES, and HARDIMAN, Circuit Judges.

## OPINION

SLOVITER, Circuit Judge.

Wei Chai Wang ("Wang") petitions for review of an order of the Board of Immigration Appeals ("BIA") adopting and affirming the denial of Wang's applications for asylum and withholding of removal. A citizen of the People's Republic of China ("China"), Wang argues that the decisions of the Immigration Judge ("IJ") and the BIA are not supported by substantial evidence and law. We will deny the petition for review.

### I.

Wang entered the United States on June 12, 2003, using the identification documents of another Chinese national.

While passing through immigration, Wang was detected and placed in custody pending a credible fear interview.

At that interview, Wang stated that he was single, that he was responsible for the pregnancy of his girlfriend, later identified as Hui Li ("Li"), and that Li had been forced to undergo an abortion. He also asserted that the Family Planning Office had scheduled sterilization procedures for both him and Li, leading them to flee their homes and live on the streets. Wang said that his parents were told that they would be fined if Wang did not return for his sterilization. Although Wang stated that he feared being beaten if he returned to China, he also stated he had no other reason to fear harm. Based on the interview, the asylum officer concluded that there was a significant possibility that Wang's claims of persecution could be found credible in a full asylum or withholding of removal hearing.

Wang filed a formal application for asylum on February 11, 2004. Although he stated that his marital status was single, he referred to Li as his wife in the affidavit accompanying his application.[1] There was no reference to sterilization in that affidavit but Wang stated that he was fined 3,000 yuan following Li's abortion, and that she was forced to undergo "periodic medical exams" in her weakened state. App. at 198. They then traveled to Xiamen, a neighboring city, before Wang left for the United States. According to Wang, thereafter the government threatened his family, sought information about him, and seized his family's fishing boat and barred his family from fishing after a Taiwanese vessel helped them with mechanical difficulties while they were at sea.

In a second affidavit, Wang elaborated on the facts, including that he and his father were accused of collaborating with Taiwan following the boat seizure. Following Li's abortion, Wang's parents were arrested, jailed for a few days, received demands that they pay the fine, and warned that Wang would be jailed if he were found.

At his removal proceedings on January 6, 2005, Wang testified further about the boat seizure, the accusations of contact with the Taiwanese, the resulting threats of torture and the fine of 3,000 yuan for Li's forced abortion, which he was unable to pay. Wang testified that if he went back to China the government would still be looking for him and would try to imprison him, either for failure to pay the fine or because they wanted revenge against him.

Wang provided copies of his birth certificate and that of Li and letters from Wang's family and Li which substantially corroborate Wang's testimony with respect to the relationship with Li, her abortion, the 3,000 yuan fine, and the related jailing of Wang's parents.

In an oral decision after the hearing, the IJ issued a "mixed credibility finding" with respect to Wang's testimony. App. at 46. The IJ found that there was nothing "inherently implausible" about the portion of Wang's testimony regarding Li's abortion, as that testimony "was consistent throughout the written documentation and testimony," App. at 46, but the IJ questioned the credibility of Wang's testimony regard-

---

1. Wang later asserted that he and Li were married in a traditional ceremony, but were refused a marriage certificate because of their age. At the time, Wang was 19 years old and Li was 18. According to the Department of State's profile of China at the time of Wang's asylum hearing, the minimum age for marriage in China was 22 for males and 20 for females. *See* Bureau of Democracy, Human Rights and Labor, *China: Profile of Asylum Claims and Country Conditions* 22 (June 2004). App. at 109, 130.

ing forced sterilization, as those claims were never mentioned again after the credible threat hearing, the boat seizure, which was not mentioned until Wang's asylum application, and the jailing of his parents, which was first included in Wang's second affidavit. App. at 47. Moreover, the IJ concluded that, even if Wang's allegations were true, he had not demonstrated past persecution or a well-founded fear of future persecution sufficient to qualify him for asylum or related relief. Therefore, the IJ denied Wang's applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").[2]

On Wang's appeal to the BIA, the BIA adopted and affirmed the decision of the IJ. The BIA briefly discussed the IJ's decision, commenting that the IJ "concluded that the respondent was not credible based on inconsistencies present in the record," and ultimately agreed with the IJ's "conclusion that the respondent failed to demonstrate past persecution on account of his violation of China's birth control policies" and that "even if true, [the boat seizure] incident was not of a level of harm amounting to persecution." App. at 2. Wang filed a timely petition for review

## II.

We have jurisdiction to review final orders of the BIA under 8 U.S.C. § 1252(a)(5). Where, as here, the BIA adopts and affirms the decision of the IJ we must review that decision. *Abdulai v. Ashcroft,* 239 F.3d 542, 549 n. 2 (3d Cir. 2001). However, because the BIA discussed the basis of the IJ's decision, we also have jurisdiction to review the decision of the BIA. *Xie v. Ashcroft,* 359 F.3d 239, 242 (3d Cir.2004). We will uphold those decisions as long as they are sup-

ported by substantial evidence. *Obale v. Attorney General,* 453 F.3d 151, 161 (3d Cir.2006); *Guo v. Ashcroft,* 386 F.3d 556, 561 (3d Cir.2004).

## III.

Wang argues: (1) that he has demonstrated past persecution and a well-founded fear of future persecution; (2) that the IJ failed to consider corroborating evidence contained in the letters written by Wang's parents and Li; and (3) that the BIA misstated the IJ's finding of facts by concluding that the IJ made a "negative credibility" finding, rather than a "mixed credibility" finding. In addition, Wang refers to an interim decision entered by the BIA after his hearing that concludes that an individual "claiming persecution based on an unmarried partner's abortion" may be able to qualify for asylum if he is able to demonstrate "that he has suffered harm amounting to persecution on account of ... resistance" to a coercive population control program. *In re S–L–L–,* 24 I. & N. Dec. 1, 10 (BIA 2006). On account of that decision, Wang briefly argues that he is entitled to a rehearing so that the IJ may make findings regarding his "other resistance" to China's coercive population control policies. 8 U.S.C. § 1101(a)(42).

We will not discuss the applicable law regarding the proof needed to establish eligibility for asylum as the parties are well aware of it. Suffice it to note that we have held that "persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Fatin v. INS,* 12 F.3d 1233, 1240 (3d Cir.1993).

■ The IJ recognized two components to Wang's claim that he was persecuted on

---

**2.** Wang has waived his claim under the CAT by failing to raise the issue in his petition for

review. *See He Chun Chen v. Ashcroft,* 376 F.3d 215, 221 (3d Cir.2004).

account of China's population control policies: the threat of forced sterilization and Li's forced abortion. The IJ did not credit the claim of forced sterilization, noting that Wang last mentioned that claim in his credible fear hearing and failed to raise it at his asylum hearing. We also note that Wang did not raise the threat of forced sterilization in his formal asylum application or in either of the affidavits supplementing that application. Under the substantial evidence standard, an "adverse credibility determination must be upheld on review unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Xie,* 359 F.3d at 243 (quoting *Gao v. Ashcroft,* 299 F.3d 266, 272 (3d Cir.2002)). Considering that Wang's forced sterilization claims were made exclusively in his earlier interviews, to which we have often afforded less weight, *see Xie,* 359 F.3d at 246, and then completely ignored thereafter, we can not say that the IJ erred in finding that claim untenable.

On the other hand, the IJ found "nothing inherently implausible" about Wang's forced abortion claim and noted that Wang's story "was consistent throughout the written documentation and testimony." App. at 46. Thus, the IJ's failure to explicitly discuss the corroborating evidence contained in the letters written by Wang's parents and girlfriend is of no moment, as the facts attested to by those letters were found largely credible.

■ Assuming the truth of Wang's allegations, then, the IJ concluded that Wang was not entitled to refugee status with respect to his forced abortion claim. The IJ relied on our decision in *Cai Luan Chen v. Ashcroft,* in which we declined to extend refugee status to non-married individuals whose partners were forced to undergo an abortion or sterilization, even where such individuals "*wanted* and *indeed* tried to get married but were prevented from doing so

by a law that is an integral part of a program of persecution." 381 F.3d 221, 229 (3d Cir.2004) (emphasis in original). On the facts alleged, Wang's claim of past persecution as a result of Li's forced abortion must fail.

The IJ also concluded that Wang did not have a well-founded fear of future persecution as a result of Li's forced abortion, again citing *Cai Luan Chen* for its holding that an unmarried person may not establish persecution on the basis of his partner's forced abortion.

■ The IJ issued a mixed credibility finding with respect to Wang's boat seizure claim and also concluded that Wang did not establish past persecution or a well-founded fear of future persecution with respect to that incident. Substantial evidence does not compel a contrary conclusion with respect to either finding. Even if taken as true, the actual seizure of the boat did not constitute "severe economic disadvantage" as we have defined it. *Li v. Attorney General,* 400 F.3d 157, 168 (3d Cir.2005). Wang's family continued to be able to support itself with other jobs, including bicycle repair. Nor do the alleged threats accompanying the seizure of the boat support a well-founded fear of harm, as the officials did not take any action or make any contact regarding that incident in the twenty-two months before Wang's departure from China. *See Li,* 400 F.3d at 164 ("unfulfilled threats must be of a highly imminent and menacing nature in order to constitute persecution").

Because the IJ concluded that Wang had not established his entitlement to asylum, even when taking his allegations as true, whether the BIA properly characterized the IJ's credibility finding as "negative" rather than "mixed" is immaterial on the record before us. There is substantial evidence to support the IJ's credibility findings to the extent that they are nega-

tive and to support the IJ's findings that Wang did not state a claim for asylum even when taking Wang's allegations as true.

Finally, we reject Wang's argument that he is entitled to a rehearing for findings of fact regarding his resistance to China's population control policies. Wang rests on the allegations now before the court, which do not support an inference that he engaged in sufficient "other resistance," or suffered harm therefrom, to merit asylum.[3]

### IV.

For the above reasons, we conclude that the IJ's decision not to grant Wang asylum or withholding of removal is supported by substantial evidence.[4] We will deny the petition for review.

---

3. Wang does not allege that he engaged in any general opposition activities and in fact testified that he attempted to pay his fine while he remained in China. Furthermore, Wang does not claim that he has suffered any harm amounting to persecution therefrom.

4. Because we have concluded that Wang has not established a claim for asylum, we need not separately analyze whether he is entitled

to withholding of removal. *See Zubeda v. Ashcroft,* 333 F.3d 463, 469–70 (3d Cir.2003) ("[I]f an alien fails to establish the well-founded fear of persecution required for a grant of asylum, he or she will, by definition, have failed to establish the clear probability of persecution required for withholding of deportation.").