

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-11-2008

# Ou v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4177

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Ou v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1762.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1762

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————

No. 06-4177

————

ZHI FANG OU,

Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES,

Respondent

_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
BIA No. A96 395 375
Immigration Judge: Miriam K. Mills

_____

Submitted Under Third Circuit LAR 34.1(a)
December 11, 2007

Before: RENDELL, STAPLETON, *Circuit Judges*,
and IRENAS,* *Senior District Judge*.

(Filed:  January 11, 2008)

_____

* Honorable Joseph E. Irenas, Senior United States District Judge for the District of
New Jersey, sitting by designation.

OPINION OF THE COURT

IRENAS, *Senior United States District Judge*.

Petitioner, Zhi Fang Ou, seeks review of the decision of the Board of Immigration Appeals ("BIA") affirming, without opinion, the Immigration Judge's ("IJ") decision that Petitioner was ineligible for asylum, withholding of removal, and relief under the Convention Against Torture.[1] For the following reasons, the Petition will be denied.

## I.

Petitioner is a 20-year-old female citizen of the People's Republic of China. She asserts that she left China on or about April 2, 2004, because she was detained for two weeks due to her parents' violation of China's family planning policy. Petitioner also asserts a fear of returning to China because she will not be free to have her own children under the policy. Petitioner is not currently married and does not have any children. She applied for political asylum and for withholding of removal in September of 2004.

At the removal proceedings before the IJ, Petitioner testified that family planning officials came to her family's home in December of 2003, and ordered her parents to pay

---

[1] Petitioner did not challenge the denial of her application for relief under the Convention Against Torture before this Court. Accordingly, we deem the issue waived. *Lie v. Ashcroft*, 396 F.3d 530, 532 n.1 (3d Cir. 2005).

2

a fine for violating China's birth control policy.[2] Petitioner stated that when her mother told officials that the family could not afford to pay the fine, the officials took Petitioner and her two younger siblings to a labor camp. She claimed that they were forced to work in a garden and that they remained in the labor camp for two weeks.[3] According to Petitioner, she and her siblings were released after her father borrowed money to bail them out.

Petitioner testified that her parents never paid the original fine and that, as a result, officials bothered her family periodically. She claimed that officials sometimes damaged the family's furniture and that occasionally her parents paid the officials a limited amount of money. Petitioner stated that her family had no further contact with family planning officials beyond December 2003. Nonetheless, Petitioner stated that her parents, fearing that their children would be detained again, sent her two younger siblings to live with their aunt. She testified that her parents moved to another location as well. When asked on cross-examination what fears Petitioner would have if she returned to China, she testified that in the future she would get married and China's birth control policy would not provide her with the freedom to have children.

---

[2] At the time that the officials sought to enforce the violation, Petitioner was 16-years-old, her sister was 15-years-old, and her brother was 14-years-old.

[3] At the conclusion of Petitioner's removal proceedings, counsel for both sides stipulated to the IJ taking administrative notice that there was no mention in the State Department's 2004 Asylum Profile and Country Condition Reports that China enforced its population control laws by detaining the children of alleged violators.

When Petitioner arrived in the United States on or about April 2, 2004, she was interviewed by immigration officials.[4] During the interview Petitioner was asked about the purpose of her trip to the U.S. She responded that she came to make money for her parents. Immigration officials also asked her about any fears she had about returning to China. She stated that she did not want to return to China and that her mother told her to travel to the U.S. At the removal proceedings one year later, Petitioner testified that she did not mention any of her family's problems with Chinese officials or her detention in a labor camp during the interview because "the snakehead"[5] told her not to discuss family planning issues once she arrived in the U.S.

Petitioner also testified that while she was awaiting her hearing before the IJ she worked for her uncle at his restaurant. She stated that her uncle was a U.S. citizen. At the removal proceedings, Petitioner did not provide any corroborating evidence, in the form of an affidavit, direct testimony or otherwise, from her uncle about his knowledge of her family's circumstances. In addition, Petitioner did not provide corroborating evidence from her mother regarding their family's problems with Chinese family planning officials.

---

[4] Petitioner testified that she previously attempted to come to the U.S. in February 2004, but was stopped in an unspecified part of Korea before being returned to China. Upon her return to China, Petitioner's relatives allegedly picked her up at the airport without interference by Chinese government officials.

[5] In immigration law jargon, a "snakehead" is a human smuggler who assists illegal immigrants across the U.S. border.

The IJ issued an oral decision and order on April 19, 2005, denying Petitioner's request for asylum, withholding of removal, and relief under the Convention Against Torture, and ordering Petitioner's removal to China. The BIA affirmed the IJ's decision, without opinion, on August 23, 2006. This Petition followed.

**II.**

This Court has jurisdiction to review the BIA's final removal order pursuant to 8 U.S.C. § 1252(a). Where the BIA affirms the IJ's decision without opinion as the final agency determination, "we review the IJ's opinion and scrutinize its reasoning." *Dia v. Ashcroft*, 353 F.3d 228, 245 (3d Cir. 2003) (en banc). Factual determinations about past persecution or fear of future persecution, as well as credibility determinations, are reviewed under the substantial evidence standard. *Chen v. Gonzales*, 434 F.3d 212, 216 (3d Cir. 2005). Thus, factual findings must be upheld "'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). Adverse credibility determinations must be based on "inconsistencies and improbabilities that go to the heart of the asylum claim." *Id.* (internal quotation marks omitted).[6]

---

[6] The REAL ID Act of 2005 changed the standard for credibility determinations. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). However, the change was prospective, taking effect on May 11, 2005. *See* 8 U.S.C.A. § 1158 note (West 2005) (Effective and Applicability Provisions, 2005 Acts). Therefore, the change does not apply to Petitioner's case because her asylum application was initially filed on September 13, 2004, and amended on March 7, 2005.

**III.**

In denying Petitioner's requests for asylum[7] and withholding of removal,[8] the IJ found her testimony incredible.  Specifically, the IJ noted the lack of consistency between Petitioner's statements to immigration officials when she arrived in the U.S. and the statements provided in her applications for asylum and withholding of removal.  The IJ found that Petitioner's explanation for the inconsistencies did not make sense because her statement to immigration officials that she came to the U.S. to make money for her parents was more likely to lead to her removal than if she had said she feared persecution because of China's family planning policy.  The IJ went on to state that because of these "significant inconsistencies," the court would "necessarily require corroboration" of Petitioner's testimony.

However, the IJ found that no corroboration was provided.  First, the IJ noted the lack of affidavits or testimony from Petitioner's uncle and mother in support of her

---

[7]  To qualify for asylum, an applicant must demonstrate that she meets the statutory definition of "refugee" under the Immigration and Nationality Act ("INA").  *See* 8 U.S.C. § 1158(b)(1)(A).  The INA states generally that a refugee is "any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ."  8 U.S.C. § 1101(a)(42).

[8]  Withholding of removal does not rely on the perspective of the applicant's well-founded fear, but is instead appropriate only if the applicant demonstrates that there is a "clear probability" that the applicant's life or freedom would be threatened upon her removal to a particular country.  *See INS v. Stevic*, 467 U.S. 407 (1984); *see also* 8 U.S.C. § 1231(b)(3)(A).

6

claims. The IJ held that Petitioner provided no reasonable explanation for such omissions. Second, the IJ found that there was no objective corroboration that China enforced its population control policy by detaining the children of violators in labor camps. Again, the IJ held that there was no reasonable explanation provided for why objective evidence could not be found in articles or reports discussing the enforcement of China's population control policy.

This case presents familiar issues of credibility and corroboration. As this Court has observed before, "corroboration and credibility, although intuitively related, are distinct concepts that should be analyzed independently." *Obale v. Attorney General*, 453 F.3d 151, 163 (3d Cir. 2006) (internal quotation marks omitted). A separate analysis is necessary because "even a credible asylum applicant may be required to supply corroborating evidence in order to meet [her] burden of proof." *Chen*, 434 F.3d at 221 (alteration in original) (internal quotation marks omitted); *cf. id.* at 221-22 ("If we assume that the IJ did not make a valid [adverse] credibility determination, it does not affect the result in this case. . . . [B]oth the Country Report's conclusion that forced abortion is not governmental policy in China, coupled with the almost total lack of corroboration of [Petitioner's] story, constitutes substantial evidence sufficient to deny the petition for review." (footnote omitted)).[9]

_____

[9] Although not applicable to this case, relatively recent changes to the immigration laws emphasize the importance of corroboration. With respect to sustaining an applicant's burden of proof in asylum cases, the INA instructs that "[t]he testimony of the

Bearing in mind this need for separate analyses, we turn to the present Petition. We find that the IJ's determinations with respect to both corroboration and credibility are supported by substantial evidence, and this Court is not compelled to conclude to the contrary. Focusing first on corroboration, a three step analysis is required: (1) an identification of facts for which it is reasonable to expect corroboration; (2) the presence or absence of such corroboration in the record; and (3) the adequacy of applicant's explanation for its absence. *Obale*, 453 F.3d at 163; *Chen*, 434 F.3d at 220 (citing *Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001)).

As to the first step of the analysis, the IJ's opinion explained the need for corroboration of Petitioner's testimony regarding her detention in a labor camp for two weeks as a result of her parents' violation of China's population control policy. From the record it appears clear that Petitioner could have readily obtained corroboration from her mother, who had firsthand knowledge of Petitioner's alleged detention. We also note that Petitioner did not mention her detainment in statements to immigration officials when she first arrived in the U.S., and the State Department's Country Condition Reports did not

applicant may be sufficient . . . without corroboration, *but only if* the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts . . . ." 8 U.S.C. § 1158(b)(1)(B)(ii) (emphasis added). Thus, pursuant to the statute, corroboration will normally be required, and its absence can only be remedied by specific credible testimony. Further, the judicial review provisions of the INA provide that "[n]o court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence, as described in section 1158(b)(1)(B) . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4).

indicate that such an action was ordinarily taken to enforce the policy. *Cf. Zubeda v. Ashcroft*, 333 F.3d 463, 477-78 (3d Cir. 2003) (citation omitted). Therefore, we find that it was reasonable for the IJ to expect corroboration of Petitioner's claim.

Moving to the second step of the analysis, we agree with the IJ's conclusion that the record demonstrates an almost complete lack of such corroboration. Petitioner testified that her uncle was a U.S. citizen and that she was working at his restaurant in New York. She also stated that her uncle had personal knowledge of her family's violations of China's population control policy. Yet Petitioner's uncle did not testify on her behalf during the removal proceedings, and Petitioner did not provide an affidavit from her uncle in support of her claim. Furthermore, Petitioner failed to provide any corroboration from her mother, the one individual who certainly had firsthand knowledge of Petitioner's claim, in the form of an affidavit or other supporting documentation. Finally, no articles or reports were provided in the record to indicate that China enforced its family planning policy by detaining the children of violators.

This brings us to the final step of the analysis–the adequacy of Petitioner's explanation for the absence of corroboration. When the IJ asked Petitioner why she did not provide an affidavit or direct testimony from her uncle, she responded simply, "Don't know." No further explanation was provided. With regard to corroboration from her mother, Petitioner claimed that she received a letter from her mother detailing the family's experience in December 2003. However, both Petitioner's counsel and the

9

Government's counsel indicated that there was no letter in the record. Petitioner was unable to produce the letter herself at the removal proceedings. Lastly, on the issue of articles or reports detailing China's enforcement of its population control policy, Petitioner's counsel implicitly conceded that none existed when she stated that she "had not seen that [type of enforcement] before." Petitioner's counsel also stipulated to the IJ taking administrative notice that the State Department's reports did not mention children being detained for their parents' violations of the policy. Accordingly, because Petitioner's explanations for the absence of corroborative evidence were clearly inadequate, we conclude that substantial evidence supports the IJ's decision that Petitioner's testimony was not sufficiently corroborated.

Likewise, substantial evidence supports the IJ's adverse credibility finding. As stated previously, adverse credibility determinations must be based on "inconsistencies and improbabilities that go to the heart of the asylum claim." *Chen*, 434 F.3d at 216 (citations omitted). The two primary inconsistencies found by the IJ certainly go to the heart of Petitioner's request for asylum, i.e., her claims of past persecution and a fear of future persecution. *See* 8 U.S.C. § 1101(a)(42) (defining a "refugee" entitled to asylum as "any person who is outside [their native country] . . . and who is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution").

First, Petitioner's statements about her reasons for leaving China to come to the U.S. were inconsistent. When immigration officials first interviewed her in April 2004,

she stated that she came to the U.S. to make money for her parents. She did not mention anything about her family's problems with Chinese family planning officials just four months earlier, in December 2003. Yet five months later, in her application for asylum, Petitioner claimed that she was persecuted because of her parents' violation of China's population control policy. Petitioner also made inconsistent statements when she was asked about any fears she had about returning to China. At the initial interview, Petitioner stated that she did not want to return to China and that her mother told her she had to come to the U.S. Again however, just five months later, Petitioner claimed that she feared future persecution under China's population control policy if she chose to have children of her own. Petitioner made this claim despite the fact that she is not married and does not have any children. We conclude that such inconsistencies going to the very core of Petitioner's asylum application constitute substantial evidence supporting the IJ's conclusions that her testimony was not credible.

Because substantial evidence supports both the corroboration and credibility findings, the Petition for Review with respect to asylum will be DENIED. Accordingly, the Petition will also be DENIED with respect to withholding of removal. *See Obale*, 453 F.3d at 161 ("An applicant who does not qualify for asylum necessarily does not qualify for withholding of removal.").

_____