**Mohammad ARSHAD, Petitioner**

v.

**ATTORNEY GENERAL OF
the UNITED STATES,
Respondent.**

**No. 08–2960.**

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) Oct. 1, 2009.

Opinion filed: Oct. 9, 2009.

Anser Ahmad, Esq., Harrisburg, PA, for Petitioner.

Richard M. Evans, Esq., Kristen A. Giuffreda Chapman, Esq., Sada Manickam, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: AMBRO, FISHER and JORDAN, Circuit Judges.

## OPINION

PER CURIAM.

Petitioner Mohammad Arshad is a citizen of Pakistan. He entered the United States in 2001 with a visitor's visa, which he overstayed. Arshad was placed in removal proceedings in 2003. He conceded removability, but sought asylum, withholding of removal, protection under the Convention Against Torture ("CAT"), and voluntary departure. The IJ denied relief and the BIA dismissed Arshad's subsequent appeal. Arshad then filed a petition for review.

I

Before the IJ, Arshad testified that he worked as an engineer in Pakistan. His primary employment was at the Pearl Continental Hotel in Lahore, where he maintained air conditioning systems. He testified that he also worked part-time, performing similar tasks at properties owned by then-president Nawaz Sharif and Sharif's relatives. Arshad testified that although he met Nawaz Sharif a few times, they never spoke about anything other than the installation of air systems. Arshad claimed that he was a supporter of Sharif's political party, the Pakistani Muslim League, Nawaz Sharif Group ("PML–N"), but that he was not an official member of the party and was otherwise politically inactive. Arshad stopped working

for Nawaz Sharif after the president lost power in a coup.

In November 1999, following the rise of President General Musharraf, Arshad was taken from his home by military personnel. Arshad claimed that military officials questioned him repeatedly during his detention, trying to obtain incriminating and/or false testimony about Nawaz Sharif. He further alleged that he was deprived of proper food and sleep, and that the military officials threatened to get him fired from his job, "take his life," and take away his children's education. Within two days of his return home, Arshad went to the hospital, where he was given medicine and told to eat properly and get rest. He then spent nearly a week at home recuperating. Arshad's son, Waseem Arshad, testified that his father had rashes on his body.

In July 2000, Arshad was again taken into custody from his house. Local police detained him for four days, allegedly asking for incriminating and/or false information about Nawaz Sharif. Arshad testified that he again told the authorities nothing about Sharif. When he returned home, he again went to the hospital and received similar treatment.

Arshad testified that, in November 2000, he was forced to resign from his job at the hotel. Although he was given a letter of recommendation stating that he resigned of his own accord, he claimed that he believed authorities had contacted hotel management and forced them to terminate his employment. He claimed that he opted to resign to avoid the stigma of being fired. Nevertheless, he was unable to find another job in his field in Lahore.

Arshad came to the United States in 2001. While living in Harrisburg, he drove to Kennedy Airport in New York upon learning that Shabaz Sharif, Nawaz Sharif's brother, was traveling to the United States. Arshad testified that a newspaper advertised Shabaz Sharif's trip and suggested that supporters of the PML–N greet Shabaz Sharif at the airport. While at the airport, Arshad was able to speak with Shabaz Sharif for 10 or 15 minutes. During the conversation, Sharif allegedly advised Arshad to put off returning to Pakistan, as PML–N supporters were being arrested and detained. When Shabaz Sharif departed the country, Arshad went to the airport again to see him off. Sharif again told Arshad to delay returning to Pakistan.

Arshad also claimed that in 2004, Nabeed Arshad, one of his sons living in Pakistan, was arrested and falsely charged with making speeches against the Musharraf government. Nabeed was held only so that officials could get information about his father's whereabouts. Waseem Arshad corroborated his father's testimony about Nabeed's arrest. However, Waseem also testified that he did not fear returning to Pakistan, and that his family had otherwise lived undisturbed since his father's move to the United States.

Ultimately, the IJ denied relief, reasoning that Arshad's asylum application was untimely and that he failed to demonstrate past persecution or a clear probability of future persecution for withholding of removal, or past torture or a likelihood of future torture, if he is removed to Pakistan. The BIA affirmed, reasoning that Arshad's asylum application was untimely and that he failed to qualify for an exception to the filing deadline. The BIA also upheld the IJ's determination that Arshad's two detentions and alleged forced resignation did not amount to torture or persecution. Finally, the Board held that the detention and questioning of Arshad's son about his whereabouts was insufficient to demonstrate a likelihood that Arshad would be persecuted on his return.

## II

We have jurisdiction over Arshad's petition under 8 U.S.C. § 1252(a). Because the BIA issued its own opinion, we review its decision rather than that of the IJ. *See Li v. Att'y Gen.*, 400 F.3d 157, 162 (3d Cir.2005). However, we also look to the decision of the IJ to the extent that the BIA defers to or adopts the IJ's reasoning. *See Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir.2006). We review agency factual determinations for substantial evidence, and will uphold such determinations "unless the evidence not only supports a contrary conclusion, but compels it." *Zhang v. Gonzales*, 405 F.3d 150, 155 (3d Cir.2005) (internal citations omitted).

 Arshad raises three arguments on appeal. First, he contends that the agency erred in determining that his asylum application was untimely and not subject to a changed circumstances exception. As the Government argues, we lack jurisdiction to review the propriety of the agency's determinations regarding the timeliness of Arshad's asylum application, including the applicability of the changed circumstances exception. *See* 8 U.S.C. § 1158(a)(3); *Jarbough v. Att'y Gen.*, 483 F.3d 184, 189 (3d Cir.2007).

 Second, Arshad argues that the agency erred in determining—in light of his alleged detentions, forced resignation, and meeting with Shabaz Sharif, as well as his son's alleged false arrest—that he was ineligible for withholding of removal or CAT relief. "The threshold for establishing eligibility for withholding of removal is higher than that for establishing entitlement to asylum and requires the alien to demonstrate a 'clear probability' that, upon removal to the country of origin, his or her 'life or freedom would be threatened on account of one of the statutorily enumerated factors.'" *Obale v. Att'y Gen.*, 453 F.3d 151, 161 (3d Cir.2006) (quoting *Senathirajah v. INS*, 157 F.3d 210, 215 (3d Cir. 1998)). The clear probability standard is met if the petitioner shows that it is more likely than not that he will suffer persecution if removed. *See Miah v. Ashcroft*, 346 F.3d 434, 439 (3d Cir.2003). Persecution includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir.1993). However, it "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Id.*[1] With regard to Arshad's alleged detentions and mistreatment by Pakistani authorities, the BIA agreed with the IJ that Arshad failed to demonstrate that he was persecuted or tortured. Although he sought medical attention each time he was released, the BIA reasoned that Arshad did not show he suffered any harm greater than the denial of *proper* food and sleep, as opposed to *any* food or sleep, consistent with his claim that doctors told him to merely eat well and rest. Although the experiences Arshad claims to have suffered are troubling, we are not compelled to disagree with the BIA's determination that the conditions of his detentions did not rise to the level of severity described in *Fatin*, for purposes of withholding of removal, or to the level of torture.

---

1. To qualify for relief under the CAT, an applicant must establish that it is more likely than not that he will be tortured if removed. *See Auguste v. Ridge*, 395 F.3d 123, 151 (3d Cir.2005). In evaluating a claim for CAT relief, the agency considers, *inter alia*, evidence of past torture inflicted upon the applicant. *See Sevoian v. Ashcroft*, 290 F.3d 166, 175 (3d Cir.2002). For an act to amount to torture, it must cause severe physical or mental pain or suffering. *See Auguste*, 395 F.3d at 151. For the reasons mentioned in the text, Arshad cannot prevail on his claim for CAT relief.

■ Likewise, we agree that Arshad's letter of resignation does not demonstrate past persecution entitling him to withholding of removal. *See Li,* 400 F.3d at 168 (holding that the "deliberate imposition of severe economic disadvantage ... may constitute persecution" if it threatens a petitioner's life or freedom). As the BIA and IJ noted, the letter itself states that Arshad was an excellent employee who resigned of his own accord; Arshad presented no evidence, other than his unsupported assumptions, that Pakistani officials forced his employer to terminate him.

■ Arshad also argues that his encounter with Shabaz Sharif at JFK Airport, in which Sharif advised him not to return to Pakistan, undermines the agency's determination that he failed to demonstrate a likelihood of future persecution or torture. However, we lack jurisdiction to entertain that claim because he failed to exhaust the issue before the BIA. *See Lin v. Att'y Gen.,* 543 F.3d 114, 120 & n. 6 (3d Cir.2008) (holding that exhaustion of issues is jurisdictional). A petitioner may exhaust an issue by raising it either in his brief to the BIA or in his notice of appeal from the IJ's decision. *See id.* at 120–21. Arshad's only argument before the agency regarding his meeting with Sharif was his claim that Sharif's advice constituted changed circumstances sufficient to excuse the untimely filing of his asylum application.

■ Next, Arshad contends that his son's arrest under false pretenses demonstrates a likelihood of future persecution or torture. As the BIA reasoned, that fact that his son was detained on one occasion and questioned about Arshad's whereabouts is insufficient to show that he will more than likely be mistreated. More to the point, the IJ noted that the rest of Arshad's family has remained in Pakistan undisturbed by authorities since his son's arrest in 2004. Indeed, his son Waseem testified that he traveled to Pakistan from the United States and neither experienced problems then nor expects to be harassed on a future return.

Finally, we turn to Arshad's argument that the decisions of the IJ and BIA were "against the weight of the evidence." This argument misapprehends our standard of review. As already discussed, our concern is not whether the agency reached a decision contrary to one we might reach in the first instance, but whether Arshad has shown that any reasonable adjudicator would be compelled to disagree with the agency's decision. *See* 8 U.S.C. § 1252(b)(4)(B). For the foregoing reasons, we conclude that Arshad has not met that burden.

Accordingly, we will deny the petition for review.