**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3923
_____

FNU FRENGKY, a/k/a Frengky,
                                                            Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                                            Respondent


_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A96-204-274)
Immigration Judge: Robert P. Owens

_____


Submitted Under Third Circuit LAR 34.1(a)
May 19, 2010
Before:  SCIRICA, SMITH and WEIS, Circuit Judges
(Opinion filed: May 24, 2010)


_____

OPINION
_____


PER CURIAM.


        Petitioner Frengky, a citizen of Indonesia and a Christian of Chinese

ethnicity, seeks review of a final order of removal.  For the reasons that follow, we will

1

deny his petition for review.

# I.

Frengky entered the United States in May 2001, and he overstayed the time period permitted by his nonimmigrant visa. In October 2005, Frengky was convicted in Pennsylvania state court of criminal conspiracy.[1] Thereafter, the Government issued Frengky a Notice to Appear, charging him as removable pursuant to 8 U.S.C. §§ 1227(a)(1)(B) and (a)(2)(A)(I).

To block his removal Frengky applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). At a hearing before an immigration judge ("IJ"), Frengky testified that he feared persecution on account of his ethnicity and religion. The IJ summarized the testimony as follows: Frengky worked at a printing company; he was attacked at work by native Indonesians during the May 1998 riots[2]; during the attack, the rioters threw stones and yelled "Chinese, Chinese"; one of the rioters cut Frengky with a piece of broken glass, and the cut required stitches; at various random times thereafter, native Indonesians threw stones at Frengky and at his

---

[1] More specifically, Frengky pleaded nolo contendere in the Dauphin County Court of Common Pleas to one count of criminal conspiracy, in violation of 18 Pa. Cons. Stat. Ann. § 903(a)(1).

[2] As we have noted previously, "[i]n May 1998, there were serious and widespread attacks on Chinese-owned businesses and homes by Muslim Indonesians, which led to the deaths of over one thousand people. Thus, 1998 represented a period of significant violence and rioting against individuals of Chinese origin throughout Indonesia." Lie v. Ashcroft, 396 F.3d 530, 533 (3d Cir. 2005) (quotations omitted).

place of worship, and they subjected Frengky to verbal harassment and intimidation.

The IJ first determined that Frengky's asylum application was untimely. The IJ next determined that although Frengky had credibly testified at the hearing, Frengky had nonetheless failed to demonstrate that he would likely be persecuted or tortured upon removal to Indonesia. The IJ determined that the incidents of mistreatment suffered by Frengky were not severe enough to constitute past persecution. The IJ also determined that "[t]here is simply nothing in the [r]ecord that establishes that it is more likely than not that [Frengky] would be subjected to persecution in the future." Finally, the IJ determined that the record did not demonstrate Frengky's eligibility for CAT protection.

The Board of Immigration Appeals ("BIA") dismissed Frengky's appeal. The BIA agreed with the IJ that Frengky "is ineligible for asylum as a result of [his] failure to file his asylum application within one year of the date of his arrival in the United States . . .." As for withholding of removal, the BIA agreed with the IJ that "the mistreatment claimed by [Frengky] does not rise to the level of past persecution," and that Frengky had not established that future persecution was more likely than not. The BIA determined that Frengky had "failed to establish either that he faced an individualized risk of persecution or that there was a pattern or practice of persecution directed against ethnic Chinese Christians in Indonesia." Finally, the BIA determined that Frengky failed to demonstrate that he would likely be tortured upon removal. This petition for review

3

followed.

## II.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). Abdulai v. Ashcroft, 239 F.3d 542, 547 (3d Cir. 2001). "[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and BIA." Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). We review determinations regarding statutory withholding of removal under the substantial evidence standard, and we will not disturb that determination "unless the evidence not only supports a contrary conclusion, but compels it." Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir. 2005) (quotations omitted).

## III.

The only claim raised by Frengky on appeal is that the BIA erred in finding him ineligible for statutory withholding of removal. Frengky argues that "the cumulative effect of all the incidents described . . . rises to the level of persecution within the meaning of the INA." Frengky also argues that "[t]here is a well documented pattern or practice of persecution directed towards Chinese and Chinese Christians living in Indonesia," and that "if forced to return to Indonesia, . . . [he] is sure to fall victim to this pattern or practice of persecution."

4

"The threshold for establishing eligibility for withholding of removal is higher than that for establishing entitlement to asylum and requires the alien to demonstrate a clear probability that, upon removal to the country of origin, his or her life or freedom would be threatened on account of one of the statutorily enumerated factors." Obale v. Att'y Gen., 453 F.3d 151, 161 (3d Cir. 2006) (quotations omitted). The clear probability standard is met if Frengky shows that it is more likely than not that he will suffer persecution on account of his ethnicity or religion if removed to Indonesia. See Miah v. Ashcroft, 346 F.3d 434, 439 (3d Cir. 2003).

We conclude that substantial evidence supports the BIA's withholding of removal determination. The discrete incidents of minor physical and verbal abuse as testified to by Frengky, whether standing alone or in the aggregate, are not severe enough to rise to the level of past persecution. See Ahmed v. Ashcroft, 341 F.3d 214, 217 (3d Cir. 2003) ("persecution connotes extreme behavior, including 'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom'") (citation omitted); see also Wong, 539 F.3d at 232; Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005) (holding that ethnic Chinese Indonesian's "account of two isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury, is not sufficiently severe to be considered persecution"); Abdille v. Ashcroft, 242 F.3d 477, 494-95 (3d Cir. 2001) (mere generalized lawlessness and violence between diverse populations is not sufficient to

5

grant asylum).[3]

We also conclude that the BIA's appraisal of the likelihood of future persecution rests on substantial evidence. Specifically, we agree with the BIA that Frengky has failed to demonstrate either that it is likely he will be individually targeted for persecution upon removal, or that there exists a "pattern or practice of persecution of a group of persons similarly situated . . .." 8 C.F.R. § 208.13(b)(2)(iii)(A). In Wong, we considered State Department Reports from 1999, 2003, and 2004, and concluded that the reports did not demonstrate persecution of ethnic Chinese Christians in Indonesia that was sufficiently "systemic, pervasive, or organized" to constitute a pattern or practice. See 539 F.3d at 233-34. While the background materials in this administrative record, including a 2006 State Department Report, suggest that discrimination against religious and ethnic minorities in Indonesia continues (though is, perhaps, in decline), discrimination is not *ipso facto* persecution. See Jarbough v. Att'y Gen., 483 F.3d 184, 191 (3d Cir. 2007) ("Abusive treatment and harassment, while always deplorable, may not rise to the level of

---

[3] We reject Frengky's attempt to distinguish Lie. In both cases, the focal incidents of violence occurred during the country-wide riots in mid-1998, and they involved a cut (from a knife in Lie, and from a broken bottle in this case) requiring stitches for the petitioners. Lie's attack was no more "random and isolated" than Frengky's, and their injuries were equally non-life threatening. See Lie, 396 F.3d at 533. There is nothing in the record to support Frengky's allegation that he was the victim of severe mistreatment subsequent to the incident in May 1998.

6

persecution."); see also Pieterson v. Ashcroft, 364 F.3d 38, 44 (1st Cir. 2004)

("Discrimination is not the equivalent of persecution . . ..").

Accordingly, we will deny the petition for review.