**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 07-3440 and 07-4640

KAMALESWARI BHAGEERATHARAN;
BHAGEERATHARAN GURUNATHAPILLAI;
NIRUBAN BHAGEERATHARAN,
                                    Petitioners

v.

ATTORNEY GENERAL OF THE
UNITED STATES,
                                    Respondent

PETITION FOR REVIEW OF ORDERS
OF THE BOARD OF IMMIGRATION APPEALS
(Agency Nos. A77-013-997, A77-013-998 and A77-013-999)

Submitted Under Third Circuit LAR 34.1(a)
May 11, 2010

Before: BARRY, ROTH, <u>Circuit Judges</u> and HAYDEN,[*] <u>District Judge</u>

(Opinion Filed: June 17, 2010)

OPINION

---

[*] Honorable Katharine S. Hayden, United States District Judge for the District of New Jersey, sitting by designation.

BARRY, <u>Circuit Judge</u>

The Board of Immigration Appeals ("BIA") affirmed the decision of the Immigration Judge ("IJ") which had denied asylum, withholding of removal and relief under the Convention Against Torture ("CAT") to lead Petitioner, Kamaleswari Bhageeratharan (the "Petitioner"). The BIA also rejected Petitioner's subsequent motion to reopen. She petitions for review of both orders. We will deny the petitions.

## I. **Background**

Petitioner is a Tamil[1] woman from Sri Lanka. She claimed in her asylum application that she fled Sri Lanka and was afraid to return because of past persecution by members of the Sri Lankan army and members of the Liberation Tigers of Tamil Eelam ("LTTE" or "Tamil Tigers"), a U.S.-designated Foreign Terrorist Organization which has long sought an independent state by force in Sri Lanka. According to Petitioner, who worked at a hospital during at least part of the time of the persecution, members of the LTTE threatened to kill her if she would not give them medicine. The army, however, forbade supporting the LTTE, and soldiers regularly visited the hospital to enforce that mandate. Petitioner feared that the army would think she was providing medicine to the members of the LTTE. She describes one particularly harsh encounter when army soldiers tortured her in an attempt to get her to admit that she was providing medicine to

---

[1] Tamil is a distinct ethnic group, representing about 5% of the population of Sri Lanka.

the LTTE. The soldiers locked her up for eight days, and used physical intimidation to get her to talk, including grabbing her hair, shaking and slapping her, agitating her breathing with chili powder, and touching her breast. She claims that her father paid to have her released, and thereafter she feared for her safety.

Petitioner fled to Germany in 1997, where she met her husband, Gurunathapilllai Bahetharan, with whom she subsequently had a son. After they were denied asylum by Germany in 2001, Petitioner and her family fled to Canada. On the way to Canada, Petitioner was stopped at Fort Lauderdale International Airport in Florida where United States immigration officials questioned her and asked her to give a sworn statement. She was not honest with those officials. She told them that she and her family had come directly from Sri Lanka and that their purpose in entering the United States was "[t]o escape the shelling and bombing in Sri Lanka and protect my child." (A. at 523.) She said that she and her husband could "no longer live in peace with our child because of the bombs and trouble." (*Id*.) Of course, she had never lived in Sri Lanka with her husband and child, and she would later explain, in her asylum application, that what she feared was personal violence.

After Petitioner and her family were paroled, they continued on to Canada, where they lived until 2006. While in Canada, Petitioner worked at the Chencholai Tamil Kid's Club, teaching math, religion and the Tamil language. Canada denied her asylum application in 2006, and she and her family returned to the United States to continue

pursuing the application underlying the case now before us (which they apparently initiated during a 2003 trip to the United States).

In a May 25, 2006 oral decision and order, the IJ denied asylum, withholding of removal, and relief under the Convention Against Torture. The IJ acknowledged our precedent about airport interviews, in which we have counseled against giving airport interviews too much weight in assessing the credibility of an asylum applicant. The IJ nonetheless made an adverse credibility determination because the airport interview appeared to be reliable (e.g., Petitioner was given access to a Tamil language interpreter) and because Petitioner's inconsistent statements were significant. In denying her application, the IJ explained that "the Court would need to rely on the respondent as she is so important in evaluating her claims." (A. at 223.) The BIA affirmed the IJ's decision in July 2007, after considering and finding no error in the IJ's reliance on Petitioner's airport interview, and she petitions for review of that order.

Petitioner then brought a motion to reopen based on changed circumstances and offered as evidence several newspaper articles and reports from Amnesty International, Human Rights Watch and the UN High Commission on Human Rights, all tending to show that conditions in Sri Lanka were difficult. The articles also show that the Sri Lankan government continues to view the LTTE as a potential threat and that recent incidents of violence against Tamils have been documented. Petitioner contends that the articles show that if she returns to Sri Lanka, she will face persecution because of her

failed asylum bids, and because the Sri Lankan government will mistakenly believe that she has been supporting the LTTE abroad by associating with the Tamil school in Canada.

The BIA denied her motion in November 2007 because "[t]he material that the respondents submit is cumulative concerning conditions in Sri Lanka" and "much of the information could have been presented at the former hearing." (A. at 2.) The BIA also found that any information that might be considered new was not material because there is no evidence that Petitioner's association at the school would be cause for repercussion, and "there is no demonstration that the Sri Lankan government is aware of such employment." (*Id.*) Petitioner petitions for review of that order as well.

## II. Discussion

### A. Initial Application

An alien may qualify for asylum if he or she can demonstrate past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. *Gao v. Ashcroft*, 299 F.3d 266, 271-72 (3d Cir. 2002). Withholding of removal requires the applicant to establish a clear probability of persecution in the proposed country of deportation. *Gabuniya v. Attorney General*, 463 F.3d 316, 320-21 (3d Cir. 2006). To obtain relief under the Convention Against Torture, an applicant must demonstrate that it is more likely than not that he or she will be tortured in the proposed country of deportation. *Obale v. Attorney*

*General*, 453 F.3d 151, 161 (3d Cir. 2006). Each basis for relief requires, at minimum, credible testimony. *See Gao*, 299 F.3d at 272.

We have jurisdiction under 8 U.S.C. § 1252(a)(1). We review adverse credibility determinations for substantial evidence, *Chen v. Ashcroft*, 376 F.3d 215, 222 (3d Cir. 2004), which is "extremely deferential, setting a high hurdle by permitting the reversal of factual findings only when the record evidence would compel a reasonable factfinder to make a contrary determination," *id*. at 223. We may not disturb a credibility determination unless no reasonable person would have found the applicant incredible. *Id*. at 222.

Petitioner faults the IJ for placing too much emphasis on her airport interview. We have expressed skepticism over the reliability of airport interviews, *see, e.g., Dia v. Ashcroft*, 353 F.3d 228, 257 (3d Cir. 2003), but we have found that they may serve as the basis for an adverse credibility determination when the applicant clearly understood the questions posed and her answers went to the heart of her claim. *Chen*, 376 F.3d at 224.

Here, the airport interview was conducted with the assistance of a Tamil interpreter, Petitioner understood the questions, and she did not challenge the interviewer's conduct or any of her own responses. The record reveals key discrepancies that go to the heart of her claim. Most notably, she cited her fear of bombing and shelling at the airport interview, but her subsequent asylum application was based on a fear of personal violence.

Petitioner's statement about having just traveled with her husband and son from Sri Lanka was a lie, pure and simple. Purported chest pain does not explain how, in one version of events, she came directly from Sri Lanka with her husband and son, fearing bombing and shelling, and in the other version, she experienced individual persecution in Sri Lanka before moving to Germany, where she met her husband, had a baby and then traveled to the United States. Petitioner's only explanation is that, at the time of the airport interview, she intended to apply for asylum in Canada and not the United States, and "for her, the encounter she had with U.S. airport officials was just to get out of custody and proceed to Canada." (Petitioner's Br. at 34.) We have never held that this is an acceptable excuse for dishonesty, and we decline to do so now; indeed, this explanation shows precisely why the IJ's credibility determination must stand. If, despite specific instructions about the importance of telling the truth, Petitioner was willing to say whatever she needed to say in order "to get out of custody," then presumably she would also say whatever she needed to say now in order to gain asylum.

## B. The Motion to Reopen

Petitioner submitted a motion to reopen to the BIA, and offered news articles about the ongoing civil unrest in Sri Lanka, which showed that Tamils and Tamil areas have been targeted in isolated incidents of violence and bombing. One article concerned eight Tamils who recently went missing, and another was about a Sri Lankan man who was found dead at a Sri Lankan airport after the United Kingdom deported him. Petitioner

also submitted articles about negative Sri Lankan sentiment toward Western charities that the Sri Lankan government may perceive as pro-LTTE.

We review the BIA's denial of Petitioner's motion to reopen for abuse of discretion. *See Sevoian v. Ashcroft*, 290 F.3d 166, 170 (3d Cir. 2002). Under this deferential standard, we must uphold the BIA's decision unless it is "arbitrary, irrational, or contrary to law." *Id*. at 174 (quotation marks and citation omitted). Under 8 C.F.R § 1003.2(c)(1), the BIA has discretion to reopen proceedings if the movant states new facts to be proved at a hearing that are supported by affidavits or other evidentiary material. That new evidence must be material and have been unavailable at the former hearing. *Id*.

The evidence of unrest and trouble for Tamils is not new. Similar evidence was submitted to the IJ. Moreover, the evidence that Tamils are targeted for supporting the LTTE abroad is not material because Petitioner has not shown how her involvement with the school spells trouble for her in Sri Lanka, i.e., she has not credibly shown that the Sri Lankan government even knows about her association with the school.

Even if the purportedly new information was material, substantial evidence supports the BIA's conclusion that Petitioner could not establish a prima facie case for relief. To the extent Petitioner can be found credible in claiming that she subjectively fears returning to Sri Lanka, the information now submitted does not establish a "pattern or practice" in Sri Lanka of persecution of Tamils or of Sri Lankans returning from abroad after failed asylum applications in other countries. The question of whether a

"pattern or practice" exists is a question of fact that must be determined based on the individual record before the court. *See Sevoian v. Ashcroft*, 290 F.3d 166, 173-74 (3d Cir. 2002). We have held that "to constitute a 'pattern or practice,' the persecution of the group must be 'systemic, pervasive, or organized.'" *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005). The BIA noted that the IJ had reviewed the evidence, including the State Department's Country Reports, and correctly found that the conditions in Sri Lanka do not constitute a "pattern or practice" of persecution of Tamils. These findings are supported by substantial evidence.

In light of the above, we conclude that the BIA did not abuse its discretion in denying the motion to reopen. Petitioner's argument that a failure to reopen would amount to a due process violation lacks merit.[2]

### III. Conclusion

We will deny the petitions for review.

---

[2] We reject Petitioner's arguments as to corroboration evidence and the *sur place* claim without further discussion.